COFFEY, Circuit Judge.
 

 Defendant-appellant Obie James Randall appeals his conviction and sentence for his role in organizing and participating in a fraudulent check cashing scheme. He alleges that his initial seizure and his subsequent arrest violated his Fourth Amendment rights in that the police officers were without reasonable suspicion or probable cause; further that the district court violated the Double Jeopardy Clause of the Fifth Amendment when imposing sentence. We affirm.
 

 I. FACTS AND PROCEEDINGS BELOW
 

 On February 8, 1989, a grand jury returned a fifty-two count superseding indictment against the defendant-appellant Obie James Randall. Count One charged the defendant Randall with conspiracy to commit and attempt to commit bank larceny, in violation of Title 18 U.S.C. § 371. Counts Two through Seven, Nine, Eleven, Twelve,
 
 *1316
 
 Fifteen through Seventeen, Nineteen, Twenty, Twenty-Two, Twenty-Four through Twenty-Nine, Thirty-One through Thirty-Three, and Thirty-Six through Forty-Seven, charged Randall with aiding and abetting in the commission of bank larceny, in violation of Title 18 U.S.C. §§ 2 and 2113(b). Counts Eight, Ten, Thirteen, Fourteen, Eighteen, Twenty-One, Twenty-Three, Thirty, Thirty-Four, Thirty-Five, and Forty-Eight, charged Randall with aiding and abetting in the attempt to commit bank larceny, in violation of Title 18 U.S.C. §§ 2 and 2113(a). Counts Forty-Nine and Fifty charged Randall with possession of stolen mail, in violation of Title 18 U.S.C. § 1708. Count Fifty-One charged Randall with possession of unauthorized access devices, in violation of Title 18 U.S.C. § 1029(a)(3). Count Fifty-Two charged Randall with possession of a firearm by a convicted felon, in violation of Title 18 U.S.C. § 922(h)(1). Randall pled not guilty to all fifty-two counts.
 

 On January 3, 1990, the district court held a hearing on Randall’s motions to quash his arrest and suppress the evidence seized. At the hearing, Officer Martin Moy, a veteran (13 yrs.) on the Forest Park, Illinois Police Department, testified that on September 10, 1988, he was moonlighting as a security guard in police uniform at the Forest Park National Bank in Forest Park, Illinois. Officer Moy testified that on that day, Vanessa Hoskins walked into the bank and approached a bank teller. A few moments later, the bank manager stated to Moy that “we may have a hot one,” which Officer Moy understood to mean that there may be some kind of illegal activity concerning the transaction with Hoskins at the teller window. While the bank manager and the teller compared Hoskins’ signature to the microfiche copy of the signature on the card Hoskins presented, Officer Moy observed Hoskins walk to the bank exit and suddenly run from the bank in an easterly direction. Officer Moy pursued her, and while running in the direction where Randall sat parked in his car, Hoskins yelled, “Obie, help me, Obie, help me!”
 

 After the call for help, Officer Moy observed the defendant back his vehicle out of a parking lot directly across from the bank and drive toward Moy and Hoskins. Randall exited the vehicle and approached the uniformed officer as he was struggling with Hoskins. Because Officer Moy felt threatened, he unholstered his weapon and directed Randall, “If you don’t want to get hurt, get back in your car.” Moy testified that he “assumed that Mr. Randall was with the female since there was no one else around at the time she was yelling out for Obie.... ” Randall complied with Moy’s order and departed the scene. Shortly thereafter, Officer Moy subdued Hoskins and escorted her into the bank. At this time, Officer Moy called the Forest Park Police Department and informed the Department of Randall’s actions and provided a general description of him as well as a description of the car and the license plate number.
 

 In stipulated testimony presented to the district court during the suppression hearing, Sergeant William Pats, (18 yrs.) veteran of the Forest Park Police Department stated that on September 10, 1988, he received a radio communication about a woman attempting a fraudulent transaction at the Forest Park National Bank and a male accomplice who had recently departed from the scene of the crime. The bulletin described the male accomplice as black and his vehicle as a white Chrysler with Illinois license plate number LL2342. While driving eastbound on Madison Street in Forest Park, Illinois, Sergeant Pats observed a white Chrysler bearing the same Illinois license plate LL2342 turn westbound onto Madison Street, being driven in an aggressive manner. Officer Pats made a u-turn, advised the station that he was following the defendant and requested back-up help. After additional squads and officers arrived at the scene, Sergeant Pats directed the officers to stop Randall’s vehicle. Three police cars with flashing lights converged on the Chrysler and blocked the vehicle. The three officers exited their squad cars without drawing their guns. At this time Sergeant Pats approached Randall’s vehicle and asked the defendant-
 
 *1317
 
 appellant for his driver’s license, which reflected the name Obie L. Randall. Recognizing Randall’s name immediately from prior contacts and investigations as a suspect operating a forgery ring,
 
 [1]
 
 Sergeant Pats ordered him to exit the car. After a brief pat down for weapons, Randall was directed to stand near the rear of his vehicle. About five minutes later, Officer Moy arrived at the vehicle stop and identified Randall as the male who exited his vehicle in response to Hoskins’ call for aid while he was struggling to subdue Hos-kins. Subsequently, the officers arrested Randall.
 

 After considering the evidence at the suppression hearing, the district court concluded that Randall “indicated by his conduct that he was responding to the call from the woman to assist her in opposition, in this instance, to the police officer. This incident, I believe, supplies a sufficient basis for [] probable cause to arrest the defendant_” The judge denied the motion to quash the arrest and to suppress the fruits of the arrest.
 

 On February 28, 1990, after an eight-day jury trial, Randall was found guilty of forty-eight of the counts contained in the fifty-two count indictment.
 
 [2]
 
 Nineteen of the counts on which Randall was sentenced were subject to the Sentencing Guidelines while twenty-nine of the counts were pre-Guideline counts. The district court sentenced Randall to fourteen years imprisonment on the pre-Guideline counts and four years imprisonment on the Guideline counts to run consecutively, to be followed by a five-year period of supervised release. The defendant was also ordered to pay restitution in the amount of $350,000 as well as a special assessment of $2,400.
 

 II. ISSUES FOR REVIEW
 

 The defendant Randall argues on appeal (1) that his seizure was unreasonable and his arrest was without probable cause in violation of the Fourth Amendment and therefore, the district court’s denial of his pretrial motion to quash his arrest and suppress evidence was improper; and (2) that the conduct underlying his non-Guideline counts was used to enhance his Guideline sentence and, because his Guideline and non-Guideline sentence were ordered to run consecutively, he alleges that he was subjected to double punishment for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment.
 

 III. DISCUSSION
 

 A.
 

 Initially, Randall contends that Officer Moy could not point to specific and articula-ble facts which reasonably gave rise to his suspicion that Randall was committing a crime. Thus, Randall asserts that the district court erred in determining that there existed reasonable suspicion or probable cause to justify his arrest. This court “review[s]
 
 de novo
 
 the district court’s judgment on probable cause, ... as we do its judgment on reasonable suspicion....”
 
 United States v. Jaramillo,
 
 891 F.2d 620, 626 (7th Cir.1989) (citations omitted).
 

 Randall contends that the officers’ seizure of him occurred when three squad cars converged and surrounded his vehicle and that this action of the officers was done without the officers having had a reasonable suspicion that he was involved in criminal activity. We have previously noted that an analysis of this issue concerns two questions: “(1) was the suspect
 
 *1318
 
 seized; and (2) if the suspect was seized, was there objective justification at the time of seizure sufficient to create a reasonable suspicion that the suspect was engaging in criminal activity.”
 
 United States v. $73,-277, U.S. Currency,
 
 710 F.2d 283, 288 (7th Cir.1983). The government on appeal does not contest Randall’s allegation that he was seized; rather, it argues that the officers who apprehended Randall had reasonable suspicion to stop him as well as probable cause to arrest him.
 

 We recognize that the case law has developed different categories of seizure:
 

 “The first, an arrest, is characterized by highly intrusive or lengthy search or detention ... The second category the investigatory stop [or
 
 Terry
 
 stop], is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning; this type of encounter is ... considered a ‘seizure’ sufficient to invoke Fourth Amendment safeguards.... ”
 

 United States v. Black,
 
 675 F.2d 129, 133 (7th Cir.1982);
 
 see also United States v. Teslim,
 
 869 F.2d 316, 320-21 n. 6 (7th Cir. 1989). A
 
 Terry
 
 stop “requires only that the stopping officer have specific and articulate facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime.”
 
 Black,
 
 675 F.2d at 133 (citing
 
 United States v. Brignoni-Ponce,
 
 422 U.S. 873, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) and
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Reasonable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. The Supreme Court has held that probable cause means “ ‘a fair probability that contraband or evidence of the crime will be found,’
 
 Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a
 
 Terry
 
 stop is obviously less demanding than that for probable cause.”
 
 United States v. Sokolow,
 
 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). In order to determine whether an officer’s suspicion of criminal wrongdoing is reasonable, we “must evaluate the totality of circumstance.”
 
 United States v. Boden,
 
 854 F.2d 983, 992 (7th Cir.1988). Moreover, in forming a reasonable suspicion, “officers may also draw on their experience for their inferences from the facts they know.”
 
 Id.
 

 Officer Moy testified that Randall was the only other person present when Hoskins was yelling “Obie, help me.” Randall’s action in driving up to the scene of the struggle, exiting his vehicle in response to Hoskins’ call for aid and approaching Officer Moy on foot certainly supports the district court’s finding that Randall was coming “to assist [Hoskins] in opposition ... to the police officer.” Thus, Officer Moy’s suspicion that Randall was involved in the commission of the crime was reasonable. Furthermore, if an officer, such as Officer Moy, a thirteen-year veteran of the Forest Park Police Department issues a bulletin supported by “reasonable suspicion that the wanted person has committed an offense, then reliance on that flier or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information.”
 
 United States v. Hensley,
 
 469 U.S. 221, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985) (citations omitted). Thus, we agree that the officers had reasonable suspicion to stop Randall.
 

 Since Randall does not challenge the scope of his stop, we need not decide whether his apprehension went beyond the permissible limits of
 
 Terry v. Ohio.
 
 But even if we were to hold that the conversion of three police vehicles upon one car in order to effect a stop exceeds the limits of
 
 Terry,
 
 it certainly falls within the sliding scale calculus we described in
 
 United States v. Chaidez,
 
 919 F.2d 1193, 1196— 1201 (7th Cir.1990). There is no bright line that separates a
 
 Terry
 
 stop from an arrest, nor is there any milestone along the continuum of when a stop is so intrusive that it becomes an arrest requiring probable cause.
 
 See id.
 
 Thus, if Randall were to argue that the initial stop, prior to the arrest, exceeded the permissible limits of
 
 Terry,
 
 we hold that the officer’s seizure of Randall did not violate his Fourth Amendment rights.
 

 
 *1319
 
 Secondly, the appellant appears to argue that the officers were without the probable cause to effect his arrest.
 
 [3]
 

 “Probable cause involves a practical, common sense determination about whether, given all the circumstances present, it is reasonably probable that a person has committed or is committing an offense. See
 
 [U.S. v.] Marin,
 
 761 F.2d [426] at 430-31 [(7th Cir.1985)]; see also
 
 Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause. See
 
 United States v. Rodriguez,
 
 831 F.2d 162, 165-66 (7th Cir.1987);
 
 United States v. Scott,
 
 678 F.2d 606, 611 (5th Cir.1982); see generally 2 Wayne R. La-Fave,
 
 Search and Seizure
 
 § 3.5(b) (2d ed. 1987).”
 

 United States v. Valencia,
 
 913 F.2d 378, 382-83 (7th Cir.1990). In the instant case, the police department possessed a great deal of collective knowledge about Randall’s involvement in the crimes ultimately charged at the time they effected his arrest. In addition to Officer Moy’s reasonable suspicion that Randall was involved in the attempt to cash the forged check, upon seeing Randall’s driver’s license, the officers were aware that his name, Obie Randall, corresponded to the name of the person to whom Hoskins was calling for help. Furthermore, Sergeant Pats immediately recognized Randall’s name on the driver’s license from prior investigations as a suspect operating a forgery ring involving the use of stolen blank business account checks, stolen account information, and the use of women who posed as the account holders. This knowledge of Randall’s involvement in a forgery ring that used women to pose as account holders was consistent with the radio communication Pats received about a woman attempting a fraudulent transaction at the Forest Park National Bank and a male accomplice leaving the scene of the crime. Additionally, no more than five minutes after Randall was pulled over, Officer Moy arrived at the scene and identified Randall as the male who had responded to Hoskins’ cries for help and had approached him in a threatening manner while he was struggling with Hoskins. Based on these facts, we conclude that the collective knowledge of Officer Moy and Sergeant Pats regarding Randall’s actions constituted probable cause to arrest him.
 
 [4]
 

 B.
 

 Randall also argues that the district court violated the Double Jeopardy Clause of the Fifth Amendment by including monetary losses from non-Guideline counts when it sentenced him on the Guideline counts. At trial, the government presented extensive evidence detailing the defendant’s role in conducting a bank larceny or theft scheme that involved the cashing of fraudulent checks. The indictment charged that the bank larceny scheme began as early as 1978 if not before and continued until the defendant’s apprehension on September 10, 1988. The evidence demonstrated that Randall was the organizer of the bank fraud conspiracy which involved at least twenty other people. In this scheme, Randall acted as a buyer of stolen blank closed account corporate or business checks, credit cards, personal checks and other forms of account information from various individuals. Randall would fill out the blank stolen checks in the name of a person whose stolen account information he had access to and would then direct other members of the conspir
 
 *1320
 
 acy to take the checks to the banks with the accounts and the co-conspirators would then attempt to cash the checks offering as proof relevant account information garnered from Randall for identification in cashing the check. The government presented evidence of some 104 checks that were either cashed or were used in an attempt to cash as part of Randall’s fraudulent enterprise. Other physical evidence seized from Randall’s home also received in evidence included typewriters, a photo identification imprinter, check writers, stolen blank commercial checks and other stolen account information, as well as two revolvers.
 

 The standard of review for the sentencing court’s factual findings is clearly erroneous, while the standard of review for the sentencing court’s application of the Guidelines to the facts is due deference.
 
 United States v. Guerrero,
 
 894 F.2d 261, 264-65 (7th Cir.1990);
 
 see also
 
 18 U.S.C. § 3742(e) and (f). “The Double Jeopardy clause protects the defendant against ‘multiple punishments for the same offense.’ ”
 
 United States v. Garrett,
 
 903 F.2d 1105, 1114 (7th Cir.1990) (quoting
 
 North Carolina v. Pearce,
 
 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). The district court sentenced Randall on forty-eight counts charging separate offenses. The district court specifically separated non-Guideline counts from Guideline counts in sentencing Randall:
 

 “The [loss] number I am going to use is $383,241.24, which was as I understood the evidence and the presentation made by the government is the amount of money involved in the
 
 Guideline offenses
 

 (Emphasis added). Moreover, the defendant fails to state how the district court erred in determining the loss amount for Guideline offenses and merely asserts that it does, without citing to the record. Furthermore, the defendant made no objection at the sentencing hearing that the court had miscalculated and that the $383,241.24 figure mistakenly included non-Guideline conduct. Indeed, the transcript reveals that the trial court specifically asked the defendant whether he had any objections to the material contained in the presentence report:
 

 “The Court: Would you like to propose any changes in the PSI?
 

 Mr. Galvan (Attorney for the Defendant): Your, Honor, there are no—
 

 The Court: Let me ask formally, have you and Mr. Randall each read the PSI?
 

 Mr. Galvan: We have, Judge.
 

 There are no errors that we would like changed, Judge.
 

 The Court: All right.”
 

 (Emphasis added). Thus, the defendant has failed to preserve this issue for appeal.
 

 IV. CONCLUSION
 

 The decision of the district court is
 

 Affirmed.
 

 [1]
 

 . Prior to becoming a sergeant in 1987, Pats had been employed as a detective by the Forest Park Police Department and in this capacity became aware of the fact that “Randall was suspected of operating a forgery ring involving the use of stolen blank business account checks, stolen account information, and women posing as the account holders.” Randall's residence, located at 10828 South Indiana Street, Chicago was searched by police officers pursuant to a warrant on two separate occasions: On October 14, 1983, officers discovered typewriters, a check imprinter, business checks and bank statements; on January 6, 1988, officers found a typewriter, a check embosser, and personal uncashed checks payable to various businesses. The record is unclear as to why no previous indictments were sought.
 

 [2]
 

 . The jury found Randall not guilty of Counts Twelve, Sixteen and Seventeen, and the government voluntarily dismissed Count Four.
 

 [3]
 

 . The appellant failed to cite pertinent authority to the probable cause argument. Nonetheless, we choose to address it.
 

 [4]
 

 . Randall attempts to inject race into the analysis by alleging that the only reason Officer Moy (who is white) focused on Raridall is that both Randall and Hoskins are black. The argument is without merit because Randall’s actions provided sufficient grounds for Officer Moy's belief that he was Hoskins’ accomplice.