983 F.2d 1073
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd McCORVEY, Jr., Defendant-Appellant.
 No. 92-1294.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 9, 1992.*
Decided Dec. 28, 1992.
 
 Before CUDAHY, POSNER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 A two-count indictment charged defendant Floyd McCorvey, Jr., with theft of mail in violation of 18 U.S.C. § 1709 and with the unauthorized opening of mail in violation of 18 U.S.C. § 1703(A). Following the denial of a motion to suppress statements that McCorvey had made to postal inspectors and evidence seized, the jury found the defendant guilty of illegally opening mail but found that he was not guilty of the mail theft charge. McCorvey was sentenced to two months imprisonment. McCorvey appeals the denial of the motion to suppress. We affirm.
 
 I. BACKGROUND
 
 2
 Before his arrest, McCorvey was a mail carrier working out of the Chicago Post Office located in the Loop. Postal inspectors targeted the defendant for an undercover investigation. Inspector Rudy Green posed as a cook at a local restaurant on the defendant's mail route. One day when the defendant delivered mail to the restaurant, Inspector Green told McCorvey that he had recently moved into a new apartment and had received a former tenant's mail. Inspector Green gave the defendant a group of test letters, which included an Ebony magazine, a Jet magazine, a letter containing food stamps, two post cards, and a flier, and asked the defendant to redeliver the mail to the post office.
 
 
 3
 When the defendant returned to the post office at the end of his shift, postal inspectors had positioned themselves in the post office's lookout gallery, an area where postal inspectors observe activity in the post office. The inspectors saw McCorvey walk to "the accountable cage" to turn in his equipment. As McCorvey turned in his equipment, the inspectors observed that he was carrying the Ebony magazine, which was stuffed with items the inspectors presumed to be the other test letters. With the aid of binoculars, the inspectors determined that the firmly affixed mailing label had been torn off of the Ebony magazine.
 
 
 4
 McCorvey left the post office carrying the magazine and the items contained within it. The postal inspectors approached the defendant approximately one block from the post office and asked him to return to the post office with them. The postal inspectors did not act obstreperous, brandish any weapons, or handcuff the defendant. The defendant agreed to accompany the inspectors and never expressed a wish to leave. The inspectors informed McCorvey that they had to take him to their office "because of a situation involving the magazines and the letters that [the defendant] had received" at the restaurant. McCorvey stated that he had merely been going to his car to warm it up and that he had taken the magazines to the car so that he could read them before returning them. He added that the mailing labels must have fallen off of the magazines. During the conversation, the inspectors read the defendant his Miranda rights. The inspectors then looked into the defendant's jacket pocket, which the defendant had placed on a table, and found the food stamp envelope. The envelope had been opened and the book of food stamps was missing.
 
 
 5
 The inspectors told the defendant that the torn food stamp envelope had been removed from his coat, and the defendant responded that the envelope must have been open when he received it or that perhaps a rubberband tore the envelope open. The defendant suggested that the food stamp envelope had fallen out of his pocket and he volunteered to go in search of it. At this juncture, the inspectors took the defendant to the main post office, and McCorvey repeated his statement concerning the food stamp envelope, except he now suggested that the coupon book must have fallen out of the envelope before he received the test letters.
 
 
 6
 At the hearing on his motion to suppress his statements, the defendant alleged that he had been arrested without probable cause. He therefore requested that the court suppress the test letters and his post-arrest statements. The defendant testified at the hearing that he had the Ebony magazine with the mail enclosed within it when he returned to the post office at the end of his shift. McCorvey also admitted that the test letters were visible when he carried them and that he did not put the letters in the misdirected mail case when he left the post office, but instead took the mail with him. McCorvey further testified that when the three postal inspectors approached him and asked him to return to the post office, they did not draw their guns, raise their voices, or restrain him. The defendant also stated that he voluntarily accompanied the inspectors to the post office and that he never informed them that he wished to leave.
 
 
 7
 The district court denied the suppression motion and found that when the inspectors initially approached the defendant as he was leaving the post office, they had at least a reasonable basis to detain him to make an investigatory stop. Furthermore, the judge determined that the incredible explanations offered by McCorvey when he was asked about the mail after he and the inspectors returned to the post office gave the inspectors probable cause to seize the mail and arrest the defendant. The judge found that it was undisputed that the defendant received his Miranda rights at the time of his arrest.
 
 
 8
 On appeal, McCorvey does not contend that the postal inspectors lacked reasonable suspicion to make an investigatory stop when they first approached him near the post office. Rather, the defendant asserts that the initial encounter with the inspectors escalated into a full-blown arrest that was unsupported by probable cause. Because McCorvey asserts that he was seized in violation of the fourth amendment, he claims that the district court erred in failing to suppress the test letters and the defendant's post-arrest statements.
 
 II. ANALYSIS
 
 9
 The district court's findings of "reasonable suspicion" and of "probable cause" are reviewed for clear error. United States v. Spears, 965 F.2d 262, 270-71 (7th Cir.1992). In reviewing this matter, "we give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." United States v. Edwards, 898 F.2d 1273, 1276 (7th Cir.1990).
 
 
 10
 The appellant contends that the district court clearly erred in finding that the initial encounter on the street with the postal inspectors was no more than an investigatory stop. McCorvey alleges that the court therefore erred in finding that the defendant's arrest did not occur until he had returned to the post office with the postal inspectors and offered an implausible explanation for his actions. Law enforcement officials may briefly detain a person for questioning and pat them down for weapons if they have a reasonable suspicion that the person is armed or is, was, or is about to be involved in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). Because a Terry stop is less restrictive on a suspect's freedom of movement than an arrest, it requires less showing of cause. United States v. Boden, 854 F.2d 983, 992 (7th Cir.1988). Law enforcement officials,
 
 
 11
 "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." [ Terry, 392 U.S. at 21]. The officers may draw on their experience for their inferences from the facts they know. To determine whether an officer's suspicion of criminal activity is reasonable, a court must evaluate the totality of the circumstances.
 
 
 12
 Id. at 992 (citations omitted). See also United States v. Randall, 947 F.2d 1314, 1318 (7th Cir.1991). The appellant has not challenged the district court's finding that the inspectors had a reasonable suspicion to conduct a Terry stop.
 
 
 13
 The district court did not err in finding that the postal inspectors had an adequate basis for making a Terry stop when they initially approached the defendant on the street, and that this reasonable suspicion ripened into probable cause justifying an arrest when they questioned the defendant in the Loop post office. The assessment of whether a detention is an investigatory Terry stop rather than an arrest "involves the determination of whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the circumstances at hand." United States v. Ocampo, 890 F.2d 1363, 1369 (7th Cir.1989). Whether a detention falls under the rubric of an arrest or of a permissible detention is decided on a case-by-case basis considering such factors as the nature of the suspected crime, the length of the intrusion on fourth amendment interests, the degree of suspicion, the location of the stop, and the suspect's reaction to the police's investigation. United States v. Place, 462 U.S. 696, 709 (1983); Ocampo, 890 F.2d at 1369; United States v. Borys, 766 F.2d 304, 312 (7th Cir.1985), cert. denied, 474 U.S. 1082 (1986). If a suspect is free to leave, there isn't even a Terry stop.
 
 
 14
 The three postal inspectors approached McCorvey at 3:00 p.m. approximately a block from the post office where he worked after observing him apparently violating the law by leaving the post with the test letters at the conclusion of his shift. McCorvey testified at the suppression hearing that the inspectors did not use force when they detained him, they did not raise their voices, nor did they threaten to use any restraint or conduct a pat-down search. The defendant voluntarily returned with the inspectors to the post office where he worked for further questioning. Although the defendant testified on direct examination that he believed he had no choice but to accompany the postal inspectors, he conceded that at no time did he express a desire to leave. The questioning inside the post office lasted approximately five to ten minutes before the defendant made incriminating statements. The district court did not commit clear error in finding that the initial detention of McCorvey was no more than a Terry stop supported by a reasonable suspicion of wrongdoing.
 
 
 15
 The district court determined that McCorvey's arrest occurred only after the defendant made statements to the postal inspectors admitting that he had left the post office with the test letters and that he intended to read this mail while he was warming up his automobile. McCorvey testified that the inspectors did not read him his Miranda rights until after they had retrieved the test letters from his jacket, which was lying on a chair. Inspector Jordan testified that he had read McCorvey his Miranda rights immediately after the defendant conceded that he had taken mail from the post office for leisure reading contrary to law and standard procedure. Inspector Striby testified that he also read McCorvey his Miranda rights after he found the test letters in the defendant's pockets. Inspector Striby, however, stated that while he was examining the defendant's coat, Inspector Jordan was engaged in conversation with the defendant. It is not implausible that Inspector Jordan was reading McCorvey his Miranda rights while Inspector Striby searched for the test mail. The district court did not clearly err in finding that the postal inspectors had probable cause to arrest the defendant after he admitted departing the post office with misdirected mail and after observing him leave the post office with test mail from which a label had been torn.
 
 
 16
 The district judge's determinations of reasonable suspicion and probable cause for arrest are not clearly erroneous. Therefore, the district court properly denied McCorvey's motion to suppress evidence and statements. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After a preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs