87 F.3d 872
 Sophie STARZENSKI, Kazmer Starzenski, and Gennie Starzenski,
Plaintiffs-Appellants,
v.
CITY OF ELKHART, Elkhart Health and Sanitation Department,
Leroy Robinson, Director of Health and Sanitation
Department, Ray Minegar, Health Enforcement Officer, Fran
Curry, Health Enforcement Officer, Richard L. Moore, Street
Commissioner, and Larry Kasa, Elkhart City Police Officer,
Defendants-Appellees.
 No. 95-1766.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1995.
Decided June 25, 1996.
 
 Thomas S. Wilson, Jr. (argued), Elkhart, IN, William J. Cohen, Elkhart, IN, for Plaintiffs-Appellants.
 Robert T. Sanders, III, Matthew A. Yeakey (argued), Elkhart, IN, Paul D. Eash (argued), Elkhart, IN, for Defendants-Appellees City of Elkhart, Larry Kasa.
 Paul D. Eash (argued), Elkhart, IN, for Defendants-Appellees Elkhart Health and Sanitation Department, Leroy Robinson, Ray Minegar, Fran Curry and Richard L. Moore.
 Before POSNER, Chief Judge, COFFEY, Circuit Judge, and SKINNER, District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 Sophie Starzenski, Kazmer Starzenski, and Gennie Starzenski filed a civil rights action pursuant to 42 U.S.C. § 1983, claiming that the defendants violated their Fourth and Fourteenth Amendment rights by entering onto real property that they owned and seizing their personal property without a warrant. Additionally, Sophie Starzenski claimed that the Elkhart Police Sergeant Ernie Hill arrested her without probable cause and used excessive force to effect the arrest. The district court entered summary judgment in favor of all the defendants. The plaintiffs appeal; we affirm.
 
 I. BACKGROUND
 
 2
 Sophie, Kazmer, and Gennie Starzenski own a residence at 1015 W. Garfield, Elkhart, Indiana. In the summer of 1991, city employees had observed extensive trash and debris both inside and outside the Starzenski's residence.
 
 
 3
 In July 1991, the City of Elkhart held a hearing and ordered Sophie Starzenski to clean the exterior of her property. Thereafter, in September 1992, the city determined that Starzenski had failed to comply with this order, triggering a response by the building commissioner, Leroy Robinson. The commissioner executed a "notice order to take action" and mailed it to the plaintiffs.[1] On October 29, 1992, a hearing was conducted before City of Elkhart Hearing Officer Lee Roy Berry, Jr., pursuant to the Indiana Unsafe Building Act, Ind. Code § 36-7-9, et seq. At the conclusion of the hearing, Officer Berry ordered the plaintiffs to remove debris from both inside and outside the house within fifteen days, and further, if the trash was not removed within that time limit, the city had the authority to go onto the premises, enter the residence, and remove the trash and debris.
 
 
 4
 In December 1992, volunteers led by an Elkhart police officer attempted to clean the plaintiffs' premises. However, city officials determined that these efforts failed to satisfactorily clean the property. On February 3, 1993, the Elkhart Health and Sanitation Department voted unanimously to clean the plaintiffs' property on February 8, 1993. Plaintiff Sophie Starzenski received notice of this decision on Friday February 5, 1993.
 
 
 5
 Sophie Starzenski alleged that when she received notice of the planned clean-up, she attempted to contact city officials. However, the city offices had closed for the weekend. On Monday, February 8, 1993, defendant Richard Moore, the Street Commissioner, called defendant Captain Larry Kasa of the Elkhart Police Department and, although not requesting that a law enforcement officer be present, informed him of the intended clean-up at the plaintiffs' property. Kasa told Lieutenant Paul Petgen, of the Elkhart Police Department, about the clean-up. In his deposition, Kasa testified that he did not instruct Petgen to send an officer to the clean-up site.
 
 
 6
 Petgen informed Sergeant Hill about the clean-up. Hill went to the site at approximately 8:00 A.M. and observed that workers were in the process of removing the trash and debris from the grounds. Plaintiff Sophie Starzenski was at the premises and in Hill's presence voiced her objections to the clean-up. Sophie Starzenski left the site to confer with her attorney.
 
 
 7
 Sometime thereafter, Sophie Starzenski returned and continued to protest the clean-up. Sergeant Hill called Captain Kasa and requested that he come to the residence to assist. Upon arriving, Kasa told Sophie that she should either stand back and watch, or leave. She left the premises, but returned. At that point, according to Hill's arrest report, Sophie shouted at the workers "get off my property you thieving bastards." When Hill advised her to quiet down, Sophie repeated the above statement and Hill arrested her for disorderly conduct.
 
 
 8
 Later on the same day (February 8, 1993), the plaintiffs' lawyer obtained a temporary restraining order from the Elkhart Superior Court. The order directed the city to stop the clean-up at 1015 W. Garfield pending a hearing for a preliminary injunction. On February 17, 1993, the Elkhart Superior Court conducted a hearing at Sophie Starzenski's request for a preliminary injunction. On May 4, 1993, the Elkhart Superior Court ruled that neither Indiana Law nor the Fourth Amendment of the United States Constitution required the issuance of a warrant or judicial order before the commencement of the clean-up of the plaintiffs' property, but reserved its final ruling until after the a full evidentiary hearing on the reasonableness of the city's action and whether the city complied with the Indiana Unsafe Building Statute.
 
 
 9
 Before the state court had rendered final judgment, the plaintiffs filed their federal complaint in the Northern District of Indiana, commencing the litigation that is the subject of the present appeal. In Count I of the complaint, the plaintiffs asserted that the City of Elkhart, the Elkhart Health and Sanitation Commission, and city employees violated the plaintiffs' Fourth and Fourteenth Amendment rights by commencing the clean-up without having obtained a judicial warrant. In the Count II, the plaintiff Sophie Starzenski claimed that the defendants violated her Fourth Amendment rights alleging she was arrested without probable cause and with excessive force. She also asserted that employees of the Elkhart Health and Street Department conspired with the Elkhart Police department to have her arrested without probable cause, and that defendant Captain Larry Kasa without probable cause ordered Officer Hill to arrest her. The defendants moved for federal court abstention, pending final judgment in the state court proceedings; the district court declined the request to stay the federal action.
 
 
 10
 In November 1994, the Elkhart Superior Court entered final judgment concluding that the city did not violate the United States Constitution or Indiana law in removing the trash on February 8, 1993. The Starzenskis appealed the state court decision to the Indiana Court of Appeals.
 
 
 11
 The plaintiffs filed a motion in district court to stay the federal proceedings pending an appeal of the state court decision. The district court denied the motion and in February 1995 the court granted the defendants summary judgment, finding that the state court decision barred Count I of the plaintiffs' complaint under the doctrine of claim preclusion. The court also granted summary judgment to the defendants on Sophie Starzenski's unlawful arrest claim because the arresting officer, Sergeant Hill, had since deceased and thus had been dismissed from the case by a higher authority. Plaintiffs appeal.
 
 II. ANALYSIS
 A. Claim Preclusion on Count I
 
 12
 The plaintiffs' claim in Count I of the federal complaint was that City Officials had violated the Fourth Amendment in entering their property without a warrant in order to remove the trash and debris from the premises. The state court (after a hearing to determine the propriety of an injunction to prevent the clean-up) ruled that neither the United States Constitution nor Indiana law had been violated as a result of the clean-up. The district court found that the state judgment barred the federal suit.
 
 
 13
 On appeal, the plaintiffs argue that the district court, instead of dismissing the case, should have stayed the proceedings pending the plaintiffs' appeal of the state court judgment, in case the state judgment was reversed by an Indiana Appellate Court (or the Supreme Court of the United States).[2]
 
 
 14
 The parties' dispute thus centers upon how a federal district court should dispose of a case after a parallel state proceeding has reached judgment in a court of original jurisdiction, and the parties to date have not exhausted all their appellate opportunities.
 
 
 15
 Title 28 U.S.C. § 1738 provides that "[state] judicial proceedings ... shall have the same full faith and credit [in United States courts] as they have by law or usage in the courts of [the] State ... from which they are taken." Thus, under section 1738, we turn to Indiana law to determine the preclusive effect of its own judgments. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985); Lolling v. Patterson, 966 F.2d 230, 235 (7th Cir.1992).
 
 
 16
 Indiana Law provides two separate doctrines under which a prior judgment bars litigation in a subsequent case: claim preclusion and issue preclusion. Watson Rural Water Co. v. Indiana Cities Water Corp., 540 N.E.2d 131, 135 (Ind.Ct.App.1989).[3] Claim preclusion bars "a subsequent action on the same claim between the same parties or those in privity with them." In Re Marriage of Moser, 469 N.E.2d 762, 765 (Ind.Ct.App.1984) (emphasis in original; footnote omitted).
 
 
 17
 Issue preclusion bars the relitigation of "a particular issue, which was adjudicated in [a] prior action." Moser, 469 N.E.2d at 765 (emphasis added). For issue preclusion to apply, however, the issue in the subsequent case must have been "actually litigated and determined" in the prior litigation. Id. at 766. In other words, the determination of the issue must have been essential to the court's determination in the prior action. Watson, 540 N.E.2d at 137. If the plaintiffs had a "full and fair opportunity" to litigate the issue, any party may use the prior litigation as a bar against the plaintiffs' relitigation of that issue in a subsequent proceeding. Sullivan v. American Casualty Co., 605 N.E.2d 134, 139 (Ind.1992).
 
 
 18
 Count I of the plaintiffs' complaint filed in the district court claimed that the defendants violated the Fourth Amendment by entering upon the plaintiffs' premises without a warrant and seizing personal property. Prior to the district court's reaching the merits of this claim, the Elkhart Superior Court determined that city officials' entry onto plaintiffs' property in order to clean trash and debris without a warrant was constitutional. Thus, the Fourth Amendment issue was 'fully litigated and decided' by the state court. Therefore, the plaintiffs' Count I claim is barred by issue preclusion.
 
 
 19
 Although the claim is barred by issue preclusion, the plaintiffs nevertheless argue that the district court should have stayed the proceedings and refrained from ruling until all state court appeals had been exhausted. They argue that under Indiana law, if the Elkhart Superior Court's judgment in favor of the defendants is reversed, the judgment will not have any preclusive effect on collateral proceedings and, thus, the plaintiffs could have proceeded with their suit for damages in federal court.
 
 
 20
 Because the preclusive effect of a state judgment in a collateral federal case is governed by state law, Marrese, 470 U.S. at 380-81, 105 S.Ct. at 1331-32; Lolling, 966 F.2d at 235, we must look to Indiana law to determine whether we should give preclusive effect to a case that has reached final judgment in a trial court and which is currently being appealed. See Rogers v. Desiderio, 58 F.3d 299, 301-02 (7th Cir.1995) (applying the principle that state law controls the preclusive effect of a judgment to a situation where a judgment was on appeal within the state system, but granting a stay because Illinois law was not clear on this point).
 
 
 21
 Indiana law provides that a pending appeal does not undermine the force of a judgment. Pollard v. Superior Court of Marion County, 233 Ind. 667, 122 N.E.2d 612, 617-18 (1954). More specifically, "an appeal from the judgment of the trial court does not have the effect of vacating the judgment of the trial court .... [and] [s]uch judgment is in full force and effect until it is reversed, and is binding on the parties as to every question decided." Jones v. American Family Mutual Ins. Co., 489 N.E.2d 160, 166 (Ind.Ct.App.1986) (quoting Daugherty v. Daugherty, 119 Ind.App. 180, 83 N.E.2d 485, 486 (1949)). The fact that the plaintiffs appealed the case and now seek transfer to the Indiana Supreme Court, does not undermine the preclusive effect of the Elkhart Superior Court's judgment on issues actually decided. It is true that "a judgment which has been reversed on its merits cannot have any claim precluding effect [in subsequent cases]." Koors v. Great Southwest Fire Ins. Co., 538 N.E.2d 259, 261 (Ind.Ct.App.1989). However, given the Indiana rule in Jones and Daugherty that a judgment has full preclusive effect during the pendency of the appeal, it is clear that the rule stated in Koors is limited to those cases that have been previously reversed and has no bearing on cases that have the potential to be reversed. Therefore, Indiana law directs us to give preclusive effect to the judgment of the Elkhart Superior Court notwithstanding the plaintiffs' subsequent appeal and current application for transfer to the Indiana Supreme Court.
 
 
 22
 Finally, the plaintiffs argue that federal court abstention is appropriate pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under the Colorado River abstention doctrine, "when the proper exceptional circumstances exist, a federal court can abstain from exercising jurisdiction and defer to the concurrent jurisdiction of a state court when there is a parallel state court action pending." Rosser v. Chrysler Corp., 864 F.2d 1299, 1306 (7th Cir.1988). Abstention is based upon considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation as well as avoiding duplicative litigation." Id. (quoting Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246). District court decisions to abstain are reviewed for abuse of discretion. Lumen Constr. Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir.1985).
 
 
 23
 Abstention under Colorado River exists to avoid duplicative litigation; in the Starzenski's case, the state court had already rendered a final judgment. As described above, Indiana law provides that judgment of the Superior Court is entitled to final and preclusive effect. Because the state court had already rendered a decision, there was no reason for the district court to stay proceedings pending a final outcome. See Rosser, 864 F.2d at 1308 (staying federal litigation in personal injury lawsuit pending final outcome of state lawsuit on the same issues); Lumen, 780 F.2d at 696 (staying federal lawsuit pending final judgment in state court and noting that res judicata acts to prevent any conflict between final decisions of state and federal courts). Based upon this factual situation, we hold that the district court did not abuse its discretion in declining to stay the federal court proceedings.
 
 
 24
 B. Count II: Sophie Starzenski's Claim for Unlawful Arrest
 
 
 25
 Sophie Starzenski alleges in Count II of her complaint that she was arrested without probable cause, and that Sergeant Ernie Hill used excessive force in carrying out the arrest by securing the handcuffs to her wrists too tightly. Upon Officer Hill's death, he was dismissed from the case. The remaining defendants on Count II are the City of Elkhart, Captain Larry Kasa (Hill's Supervisor), the Elkhart Health and Sanitation Department, and several Elkhart City Employees. The district court granted summary judgment for the remaining defendants because the plaintiff failed to submit evidence sufficient to create a factual issue as to whether any of the defendants were responsible for and/or participated in Hill's arrest.
 
 
 26
 In deciding whether the district court's grant of summary judgment was proper, we undertake review de novo, inquiring as to whether there is any genuine issue of material fact and whether the movants were entitled to judgment as a matter of law. Santella v. City of Chicago, 936 F.2d 328, 331 (7th Cir.1991); Fed.R.Civ.P. 56(c). In making this determination, we look to the substantive law governing the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 27
 "An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). Similarly, a municipality cannot be held vicariously liable under § 1983 under a respondeat superior theory. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir.1986). Therefore, even if Hill acted unconstitutionally, that alone could not be grounds to hold any of the other defendants liable. In order to prevail against the City of Elkhart, the Department of Health and Sanitation, or any of the individual defendants, the plaintiff must show that these defendants were directly at fault.
 
 
 28
 In order for the City of Elkhart or the Health and Sanitation Department to be held liable under § 1983, the plaintiff must demonstrate "a direct causal link between a municipal policy or custom" and the claimed constitutional deprivation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202-03, 103 L.Ed.2d 412 (1989); Cornfield v. Consolidated H.S. Dist. No. 230, 991 F.2d 1316, 1324 (7th Cir.1993). As the plaintiff correctly points out, a municipality can be held liable for a custom even though the body's "official decisionmaking channels" have not formally approved the custom. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. With regard to the individual defendants, they can only be held liable if their actions caused the claimed constitutional violation. Wolf-Lillie, 699 F.2d at 869.
 
 
 29
 Plaintiff claims that the remaining defendants conspired to prevent her from protesting the clean-up of her property by having her unlawfully arrested. Specifically, she cites two meetings of the Health and Sanitation Commission, on December 9, 1992 and February 3, 1993. As evidence of the conspiracy, the plaintiff argues that at the December 9 meeting the Elkhart City Attorney requested that a police officer be present at the clean-up of the plaintiffs' property and further, during the meeting of February 3, the defendants agreed that the plaintiff's property would be cleaned on February 8, 1993. The plaintiff's argument is that the conspiracy ultimately led to her arrest on February 8. Moreover, she claims that the defendants violated her rights by failing to give her notice of the meetings.
 
 
 30
 In the present case, the plaintiff has failed to present any evidence to demonstrate that any of the actions of the municipal defendants rose to the level of a constitutional violation. The unconstitutional deprivation that the plaintiff claims is arrest without probable cause. Even if she were arrested without probable cause, the actions she attributes to the named defendants did not have a causal connection to the unconstitutional arrest. The plaintiff cites the two meetings, one in which the parties agreed that a police officer should be present at the clean-up, and another in which they chose a date for the clean-up, as evidence of defendants' liability for Hill's arresting the plaintiff. However, agreeing to have a police officer present because of anticipated trouble is not unconstitutional, and the plaintiff proffers no evidence (and in fact she does not even argue) that the parties agreed to or requested that the police officer arrest the plaintiff without probable cause. Thus, the plaintiff has failed to raise an issue of material fact as to whether the individual defendants or the municipal entities caused her to be arrested without probable cause. Summary judgment, therefore, was properly awarded in favor of the defendants.
 
 
 31
 Additionally, Starzenski claims that Captain Kasa, as well as being part of the conspiracy, is responsible for and therefore liable for her unlawful arrest because he directed Hill to arrest her if she returned to the clean-up site. The district court found that there was no evidence that Officer Kasa ordered her to be arrested unlawfully, and thus the plaintiff failed to make the requisite showing to survive summary judgment.
 
 
 32
 Liability under § 1983 must be "predicated upon personal responsibility." Schultz v. Baumgart, 738 F.2d 231, 238 (7th Cir.1984). In order to hold a supervisory official, such as Kasa, liable for the actions of his subordinate, a plaintiff must demonstrate that he "knowingly, willfully, or at least recklessly caused the alleged deprivation...." Rascon, 803 F.2d at 274. Here, the alleged deprivation is arrest without probable cause, and therefore the narrow issue we must decide is whether the plaintiff put forward evidence sufficient to establish that Kasa caused the plaintiff to be arrested without probable cause to survive summary judgment.
 
 
 33
 Summary judgment is reviewed de novo; the standard is as follows:
 
 
 34
 We must review the record and draw all inferences in the light most favorable to the non-movant, but a scintilla of evidence in support of the non-movant's position is insufficient to successfully oppose summary judgment; there must be evidence on which a jury could reasonably find for the plaintiff.
 
 
 35
 Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir.1994) (citing Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir.1991); Anderson, 477 U.S. at 252, 106 S.Ct. at 2512).
 
 
 36
 Plaintiff argues that she put forward sufficient evidence to survive summary judgment on the issue of Kasa's liability for her arrest. In support thereof, the plaintiff cites the fact that on February 8, 1993, Kasa arrived at the scene of the clean-up at Officer Hill's request and engaged the plaintiff in a discussion. During this discussion, Kasa told the plaintiff that if she continued to create a disturbance by using abusive language and interfering with the clean-up, she would be arrested. He told her that she should either be quiet or leave. In addition, following this conversation the plaintiff left the scene. Hill's arrest report states that at that point Kasa told Hill that if the plaintiff returned to arrest her for disorderly conduct. The plaintiff returned later that day and once again yelled and cursed at the workers cleaning her property. Hill warned her not to continue disturbing the workers. Plaintiff continued to interfere with the clean-up procedure, and at this time Hill arrested her. The plaintiff argues that Kasa's actions and instructions caused Hill to arrest her without probable cause.
 
 
 37
 In support of her claim, Starzenski relies upon Officer Hill's arrest report, which merely states that "[Captain] Kasa ... advised me that if she returned to arrest her for disorderly conduct." However, the arrest report is neither the most detailed document in the police files nor is it all the evidence the police had at their disposal when they decided to arrest her for disorderly conduct. See United States v. Randall, 947 F.2d 1314, 1319 (7th Cir.1991) (observing that the "police who actually make the arrest need not personally know all the facts that constitute probable cause ... the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.") (quoting United States v. Valencia, 913 F.2d 378, 382-83 (7th Cir.1990)). Rather Hill's arrest report is nothing but a two paragraph summary of many events that clearly does not spell out every detail of what transpired on February 8, 1993. Kasa might have said and meant, if she returns arrest her and charge her with disorderly conduct. Conversely, he could have meant if she returns and engages in disorderly conduct, then arrest her and charge her with that offense. Importantly, Hill's arrest report also documents the fact that the plaintiff returned to the scene and at once began shouting at the workers engaged in the clean-up and acting in a disorderly manner. Hill's report stated that after she yelled at the workers he advised her to quiet down and that the plaintiff continued to yell. It was at this point that Hill arrested the plaintiff for "disorderly conduct by loud noise."
 
 
 38
 The sequence of events establishes that Hill did not arrest her immediately upon her return, but only after he directed her to quiet down and she refused and continued to yell at and interfere with the workers. It is apparent that Hill did not understand Kasa to have instructed him to arrest the plaintiff without the plaintiff's having engaged in illegal action. This is made clear by Hill's answers to interrogatories when he replied that his instructions regarding arresting the plaintiff were, "if [plaintiff] continued to interfere or disrupt the workers who were attempting to clean the premises that I was to arrest her for disorderly conduct." Thus, Starzenski has not provided sufficient evidence that Captain Kasa ordered Officer Hill to unlawfully arrest Starzenski to survive the defendants' motion for summary judgment.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The Honorable Walter Jay Skinner, Judge of the United States District Court for the District of Massachusetts, sitting by designation
 
 
 [1]
 This order was also published in The Elkhart Truth, the local weekly newspaper, on September 29, 1992 and October 6, 1992
 
 
 [2]
 At the time the instant appeal was filed, the plaintiffs had appealed the Elkhart Superior Court's ruling to the Court of Appeals of Indiana, but that court had not yet ruled on the case. Subsequent to the filing of the instant appeal, on January 10, 1996, the Court of Appeals of Indiana affirmed the Elkhart Superior Court's ruling in an opinion to be published. On February 7, 1996 the plaintiffs filed a petition to transfer the case to the Indiana Supreme Court; this petition is currently pending. Therefore, although the state litigation has advanced one step further, the Elkhart Superior Court's judgment is still in place, and the plaintiffs continue to pursue state remedies attempting to reverse that judgment. Thus, the issue before us remains the same
 
 
 [3]
 Indiana courts occasionally call these doctrines "estoppel by judgment" and "estoppel by verdict" respectively, Watson, 540 N.E.2d at 135. Some courts use the phrase "res judicata" only to mean "claim preclusion." See generally 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4402, at 6 (1981) (discussing the varying terminology used to describe these doctrines). For clarity we will use "claim preclusion" and "issue preclusion."