29 F.3d 1149
 93 Ed. Law Rep. 64
 Kurt R. WIEMERSLAGE, Through his natural guardian, Frank R.
WIEMERSLAGE, Plaintiff-Appellant,
v.
MAINE TOWNSHIP HIGH SCHOOL DISTRICT 207, Board of Education
of Maine Township High School District 207, James L.
Elliott, Superintendent of Maine Township High School
District 207, et al., Defendants-Appellees.
 No. 93-2728.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 23, 1994.
Decided July 15, 1994.
 
 Keith J. Kulie, Addison, IL (argued), for plaintiff-appellant.
 John L. Wren (argued), Fay Hartog-Rapp, Seyfarth, Shaw, Fairweather & Geraldson, David Lincoln Ader, Jennifer A. Pritz, Thomas G. DiCianni, Ancel, Glink, Diamond & Cope, Chicago, IL, for defendants-appellees.
 Before FAIRCHILD, CUMMINGS, and BAUER, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 Kurt Wiemerslage, a student at Maine Township High School South ("Maine South") in Park Ridge, Illinois, was given a three-day suspension from school for violating the school's anti-loitering rule. Alleging that the rule violated his constitutional rights under the First and Fourteenth Amendments, he filed suit under 42 U.S.C. Sec. 1983. The district court dismissed his complaint for failure to state a claim, 824 F.Supp. 136. Fed.R.Civ.P. 12(b)(6). We affirm.
 
 I.
 
 2
 The Maine Township High School District 207 ("School District") publishes a manual outlining its disciplinary procedures. That manual authorizes school administrators to designate certain areas as off-limits to students. In a letter dated August, 1992, Thomas J. Cachur, principal of Maine South, notified parents and students that the area adjacent to the school's east side gate, referred to as the Hamlin Gate Area, continued to be off-limits to students. "While students can use this area to enter or leave the school campus before and after school, loitering is not permitted in this area." Cachur's letter informed parents and students that violation of this rule would result in a three-day suspension. The policy was apparently the result of complaints made by residents in the vicinity concerning the students' disregard for neighborhood property and traffic safety.
 
 
 3
 On September 23, 1992, shortly after school had ended for the day, Wiemerslage, a Maine South freshman, was standing with some friends outside of the Hamlin Gate on Gillick Street between Hamlin and Home Avenues. The students were discussing their plans for that afternoon when they were approached by Thomas Swoboda, a security officer retained by the School District. Swoboda took their names and cited them for violating the school's rule against loitering.
 
 
 4
 Judy Bovenmyer, Dean of Students at Maine South, informed Wiemerslage and his parents that he had been found in violation of the disciplinary rule and that he was suspended from school for three days. After meeting with Bovenmyer, Wiemerslage's parents asked to meet with Cachur. Dissatisfied with the results of this meeting, the Wiemerslages then requested, as was their right, a formal hearing before an officer of the School District. Upon completion of the hearing, the School District upheld the school's decision to suspend Wiemerslage.
 
 
 5
 Wiemerslage then filed an action under 42 U.S.C. Sec. 1983 challenging the constitutionality of both the school's rule and its application to him. In response, the defendants filed a motion to dismiss and, on June 11, 1993, their motion was granted and the case was dismissed.
 
 II.
 
 6
 We review the dismissal of Wiemerslage's complaint de novo. In so doing, we assume that all well-pleaded factual allegations are true and draw all possible inferences in favor of Wiemerslage. Dowlatshahi v. Motorola, 970 F.2d 289, 290 (7th Cir.1992).
 
 
 7
 Before we reach the constitutional issues presented by Wiemerslage's appeal, we consider a procedural challenge to the district court's order. In the proceedings below, there was some confusion as to who was representing the defendants. The defendants retained counsel on their own not knowing that their insurance carrier had also provided for representation. The confusion grew when, in response to the complaint, the defendants' counsel prepared an answer and the insurance carrier's counsel prepared a motion to dismiss. At a status hearing on April 30, 1993, Judge Norgle ordered the defendants to advise the court by May 14 whether they wished to proceed by the answer or by the motion to dismiss. On that same day, the defendants filed a motion to dismiss the complaint. Wiemerslage filed an answer to the motion to dismiss and on June 11, 1993, the district court granted the motion. Wiemerslage contends that he never received notice as to whether defendants were going to proceed by answer or by motion to dismiss and, therefore, the district court should have vacated the dismissal order.
 
 
 8
 The district court instructed the defendants only to notify the court as to how they would proceed. By promptly filing a motion to dismiss, the defendants sufficiently apprised the court of their intentions. Wiemerslage received a copy of the motion and filed a response within the scheduled time. It is clear that Wiemerslage was not prejudiced in any way. Given that a court can sua sponte dismiss a case for failure to state a claim, Apostol v. Landau, 957 F.2d 339, 343 (7th Cir.1992), Wiemerslage's argument is even less compelling.
 
 
 9
 We now shift our focus to Wiemerslage's constitutional challenges. He asserts, first, that the school's anti-loitering rule was unconstitutionally vague because it failed to provide adequate notice under the Due Process Clause of the Fourteenth Amendment. Wiemerslage's second claim is that his suspension was a violation of his rights of free speech and assembly under the First Amendment. We consider each claim in turn.
 
 
 10
 Wiemerslage argues that the disciplinary rule is rendered unconstitutionally vague by its use of the term "loitering" to define the prohibited conduct.[1] Laws declared unconstitutional on vagueness grounds may offend due process in different ways. By failing to articulate with any specificity the conduct to be proscribed, vague laws might not provide fair warning. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Moreover, vague laws inevitably confer on law enforcement and judicial officers an inordinate amount of discretion which easily translates into arbitrary or even discriminatory application. Id. at 109, 92 S.Ct. at 2299.
 
 
 11
 Worth noting, however, is that flexibility or breadth should not necessarily be confused for vagueness. "There is little doubt that imagination can conjure up hypothetical cases in which the meaning of [disputed] terms will be in nice question." American Communications Ass'n v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 690-91, 94 L.Ed. 925 (1950). A vagueness challenge must be considered in the context of the rule at issue. As framed by the Supreme Court, the inquiry is whether the law defines the proscribed conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Given the peculiar issues facing school administrators, a school's disciplinary rules need not be drafted as narrowly or with the same precision as criminal statutes. Linwood v. Board of Educ., 463 F.2d 763, 767 (7th Cir.), cert. denied, 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972).
 
 
 12
 Claiming that the common usage of the term, "loitering" is too nebulous to provide warning to a reasonable person, Wiemerslage asks that we declare the school's disciplinary rule void. One dictionary defines the verb "loiter" as follows:
 
 
 13
 1. To stand idly about; linger aimlessly. 2. To proceed slowly or with many stops. 3. To delay or dawdle.
 
 
 14
 American Heritage Dictionary 740-41 (1991). We find nothing inherently nebulous about this definition. In addition, any serious questions about what conduct was prohibited were eliminated when the principal explained that students could still enter and exit through Hamlin Gate. Courts which have studied the term seem to be in agreement with our assessment.
 
 
 15
 In Kolender, the Court struck down, on vagueness grounds, a California state law which required anyone found loitering to present identification or in some way account for their presence if requested by a police officer. Wiemerslage contends that Kolender, as well as decisions following it in this circuit and the Eighth Circuit, dictate that anti-loitering laws should define the term loitering more specifically to withstand vagueness challenges. Fields v. City of Omaha, 810 F.2d 830 (8th Cir.1987); Waldron v. McAtee, 723 F.2d 1348 (7th Cir.1983).
 
 
 16
 Contrary to Wiemerslage's interpretation, Kolender and its progeny do not require us to declare the school's disciplinary rule void for vagueness. Kolender and the cases that followed it all concerned criminal anti-loitering statutes and thus, were subject to a more stringent standard of specificity. Moreover, in the cases relied upon by Wiemerslage, the courts declared the statutes void not because they found the term "loitering" vague. Rather, the vagueness arose from the requirement that once found to be loitering, one was required to provide "credible or reliable identification." Kolender, 461 U.S. at 358, 103 S.Ct. at 1858. The courts determined that the identification requirements were sufficiently vague as to bestow upon law enforcement officials an inordinate amount of discretion. It was the identification requirements and not the loitering definition that the courts construed to be overly vague.
 
 
 17
 Wiemerslage's second constitutional argument is that as applied to him, the school's anti-loitering rule violates the First Amendment's guarantees of free speech and free assembly. The trial court dismissed this claim because Wiemerslage failed to allege facts which might support an allegation of a First Amendment violation.
 
 
 18
 We agree with the trial court's analysis. Although on numerous occasions plaintiff makes reference to the First Amendment and summarily alleges violations thereof, the complaint is notably devoid of any facts which would support a constitutional violation. First Amendment rights are not absolute and may be subject to time, manner, and place restrictions so long as those restrictions are narrowly tailored to serve legitimate governmental interests. Grayned, 408 U.S. at 116-17, 92 S.Ct. at 2303-04. Schools may restrict expressive activity if such activity "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731 (1969).
 
 
 19
 In this instance, Maine South students entering and leaving school through Hamlin Gate presented school officials with two problems. First, there was a concern for the students' own safety because of the traffic in the area. Second, residents in the vicinity reported damage to their properties as a result of students milling about the area. To address these twin concerns, school officials prohibited students from congregating in a specific area as a means of inducing them to proceed wherever it was they were going.
 
 
 20
 Maine South's response to these problems was appropriate. Personal safety and damage to property are two legitimate reasons to regulate speech and assembly. See, e.g., Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (upholding state statute prohibiting picketing which obstructs or interferes with access to a courthouse). The rule drafted by Maine South was narrowly tailored in that it was limited to a confined space and proscribed conduct regardless of its expressive content.
 
 
 21
 Wiemerslage fails to allege facts which render these restrictions constitutionally unreasonable. Maine South's anti-loitering rule was not designed to prevent student speech or assembly. Wiemerslage does not articulate why the school's concerns for safety and property damage were somehow outweighed by his need to exercise his rights of free speech and assembly in the Hamlin Gate area. Nor does he explain why the rule was overly broad. Consequently, his claim alleging violations of the First Amendment was properly dismissed.
 
 III.
 
 22
 Because Wiemerslage's complaint fails to state a claim upon which relief can be granted, the trial court's decision to dismiss the complaint is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 At oral argument, counsel for Wiemerslage suggested that the phrase "Hamlin Gate area" was also unconstitutionally vague. Because this allegation was not made in the complaint, we do not address it in our review of the district court's order