**Todd COIL, et al., Plaintiffs,**

v.

**JACK TANNER TOWING CO., INC., et al., Defendants.**

**No. 00–CV–686.**

United States District Court, S.D. Illinois.

Feb. 20, 2002.

Dennis M. O'Bryan, Neil A. Davis, O'Bryan, Baun et al., Birmingham, MI, for Plaintiffs.

W. Scott Miller, Stephanie R. Miller, Miller & Miller, Louisville, KY, David K. Haase, Scott V. Rozmus, Darren M. Mungerson, Jenner & Block, Chicago, IL, Gary T. Sacks, Goldstein & Price, David A. Perney, Attorney at Law, James V. O'Brien, John J. Gazzoli, Jr., Lewis, Rice et al., St. Louis, MO, Michael A. Snyder, Conklin, Murphy et al., Chicago, IL, for Defendants.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. *Introduction*

Pending before the Court are several motions filed by Defendants: (1) Lewis & Clark Marine, Inc.'s motion to dismiss Second Amended Class Action Complaint (Doc. 101); (2) Tabor Marine Services, Inc.'s motion to dismiss, or in the alternative for summary judgment (Doc. 105); (3) Osage Marine Service, Inc.'s motion to dismiss (Doc. 114); (4) Jack Tanner Towing Co., Inc.'s motion to dismiss Plaintiffs' Second Amended Complaint or alternatively to enter summary judgment (Doc.119); and (5) Illinois Marine Towing, Inc.'s motion for summary judgment (Doc. 163).[1] Because granting any of these motions would be dispositive to the particular Defendant, Plaintiffs strenuously oppose the motions. Based on the reasons stated herein, the Court grants the motions to dismiss and the motion for summary judgment.

On September 7, 2000, Plaintiffs filed suit against their employers seeking overtime pay pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/3 (Doc. 1).[2] On May 4 2001, Plaintiffs filed a second amended complaint (Doc. 90).[3] Specifically, Plaintiffs allege that Defendants employed them on a weekly basis for more than 40 hours but that Defendants did not pay Plaintiffs time and a half for the extra hours. Plaintiffs are seamen as defined by the Fair Labor Standards Act, 29 U.S.C. § 213(b)(6) and the Jones Act Regulations, 29 C.F.R. § 783.31.

---

1. In all of the motions, Defendants raise the same arguments.

2. Todd Coil works for Jack Tanner Towing Co., Inc. and Illinois Marine Towing, Inc.; Joseph Copeland works for Illinois Marine Towing, Inc.; Steven A. Steele works for Tabor Marine Service and Midwest Materials; James Carl works for Lewis & Clark Marine, Inc.; and Charles J. Templeton works for Osage Marine Services, Inc.

3. This case purports to be a class action, however, as of this date, Plaintiffs have not moved for class certification. Therefore, the case is not proceeding as such.

Plaintiffs maintain that Defendants should have been compensating their employees overtime pursuant to Illinois Minimum Wage Law. Defendants argue that Plaintiffs, who are "seamen," cannot recover overtime under the Illinois Minimum Wage Law because any Illinois state law that purports to require overtime for seamen is preempted by federal law through the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 213(b)(6). The Court agrees with the Defendants.

## II. *Facts* [4]

Illinois Marine Towing operate tugboats and does so exclusively on federal navigable waterways, including Illinois waterways and the Mississippi River. Illinois Marine Towing's vessels operate primarily in Illinois waters. The goods (mainly grain) carried in its vessels ordinarily are transported by other companies along the inland waterway system outside of Illinois waters before and/or after Illinois Marine Towing move them. Illinois Marine Towing's tugboats occasionally deliver goods to St. Louis, Missouri. Illinois Marine Towing and its vessels are regulated by maritime law and Coast Guard regulations concerning the "rules of the road," licensing requirements and federal laws concerning communication.

## III. *Standards*

### A. Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim, the district court assumes as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (citing *Wiemerslage Through Wiemerslage v. Maine Township High School Dist.* 207, 29 F.3d 1149, 1151 (7th Cir.1994)). The question is whether, under those assumptions, the plaintiff

would have a right to legal relief. *Id.* This standard also has been articulated:

> [U]nder "simplified notice pleading," . . . the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1373 (7th Cir. 1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 46–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accord *Fries* at 457; *Vickery v. Jones*, 100 F.3d 1334, 1341 (7th Cir.1996).

The Seventh Circuit has reiterated the liberal standard governing notice pleading:

> It is sufficient if the complaint adequately notifies the defendants of the nature of the cause of action.... As the Supreme Court has recently reminded us, the Federal Rules of Civil Procedure do not permit us to demand a greater level of specificity except in those instances in which the Rules specifically provide for more detailed elaboration. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

*Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir.1998); *See also Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 419 (7th Cir. 1998). In fact, the Seventh Circuit has instructed that a plaintiff's claims *must* survive a 12(b)(6) dismissal motion if relief could be granted under *any* set of facts that could be proved consistent with the allegations. *Hi–Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1409 (7th Cir.1993).

---

**4.** These facts are taken from the Joint Statement of Uncontested Facts in the motion

packet for summary judgment filed by Illinois Marine Towing Company, Inc. (Doc. 165).

## B. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir.1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir.1997) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). The court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1205 (7th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, the non-movant may not simply rest upon the allegations in his pleadings. Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky,* 28 F.3d 666, 670–71 (7th Cir. 1994), *aff'd,* 51 F.3d 276 (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). In reviewing a summary judgment motion, the court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F.Supp. 1114, 1124 (N.D.Ill.1995). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 933 (7th Cir.1997) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Accord *Starzenski v. City of Elkhart,* 87 F.3d 872, 880 (7th Cir.1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997); *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994).

## IV. *Analysis*

The issue before the Court is whether the Illinois Minimum Wage Law, 820 ILCS 105/3, applies to "seamen" on the Mississippi River and Illinois waters in light of maritime law and the FLSA, 29 U.S.C. § 213(b)(6). Defendants contend that they are entitled either to dismissal or to summary judgment because Plaintiffs seek to subject seamen to local control of Illinois wage and hour law which is contrary to Article III of the Constitution and the fundamental principle of national uniformity in federal maritime law. Defendants further assert that FLSA specifically exempts seamen from overtime pay provisions. The Court agrees with the Defendants.

Article III, § 2 of the United States Constitution, extends judicial power "to all cases of admiralty and maritime jurisdiction." Additionally, state and federal courts have recognized through well-settled law that it is the intention of the Constitution and Congress for federal law to control *all* maritime law. *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); *S. Pac. Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). The Constitution makes clear that "Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country." *Jensen,* 244 U.S. at 215, 37 S.Ct. 524. Further-

more, in *Jensen*, the Supreme Court stated:

> One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states.

■ *Id.* Therefore, states may not apply their respective laws if those laws would "interfere with the proper harmony and uniformity" of existing admiralty law. *Id.* at 216, 37 S.Ct. 524; *see also, Knickerbocker Ice Co.*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (striking down an act of Congress which granted authority to the states to apply their workers' compensation laws to maritime employees).

■ Stated another way, state law will yield to federal maritime law where a state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *See American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981, 985, 127 L.Ed.2d 285 (1994) (quoting *Jensen*, 244 U.S. at 216, 37 S.Ct. 524). Thus, state laws which defeat existing maritime rights or enlarge existing maritime liabilities are traditionally preempted. *See, e.g., Kossick v. United Fruit Co.*, 365 U.S. 731, 741–42, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (state statute of frauds may not be applied to defeat maritime breach of contract claim); *see also State of Md. Dept. of Natural Resources v. Kellum*, 51 F.3d 1220, 1226–28 (4th Cir.1995)(**applying admiralty preemption doctrine to prevent application of state statute that purported to increase the existing standard of care under maritime law in certain maritime tort actions**).

■ If a federal statute exists, a state law may provide a rule of decision in an admiralty case only if the state law does not "conflict" with the substantive principles of federal admiralty law. Consequently, courts in admiralty cases may reach beyond maritime precedents and apply state law *only* "absent a clear conflict with federal law." *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 341, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973). Thus, in the context of this case, the Illinois Minimum Wage Law, which contains overtime provisions, may apply *unless* those provisions conflict with the substantive rule of the FLSA.

The FLSA provides for maximum hours and the payment of overtime for employees engaged in interstate commerce "except as otherwise provided in this section, . . ." 29 U.S.C.A. § 207(a)(1). However, under § 213(b)(6), "any employee employed as a seamen" is specifically exempted from the maximum hour requirements of § 207. Thus, States' overtime laws may not be applied without entering a realm in which Congress has taken specific action. Not only has Congress specifically addressed the exemption of seamen from overtime provisions in the FLSA, but also determined a detailed breakdown of the standards governing the hours of seamen. *See* 46 U.S.C. § 8104.

Here, the Court finds that the application of Illinois or any state's differing overtime provisions to seamen on federal waters would destroy the uniformity of rules applicable to commerce on the inland waterways. It would cause carriers of goods in the inland waterways to be able to maintain daily rates of pay for seamen

while outside Illinois waters but to be unable to do so while in Illinois waters. It would force such carriers to track, hour by hour when their vessels are in Illinois waters, and in some cases, when their vessels are on the Illinois side of a river and when the vessels are on another state's side of the river, to determine which wage law applies. This conflicts with the federal maritime scheme of uniformity and avoidance of disruption. Using the Mississippi river as an example, plaintiffs' theory would create an impossible burden on a maritime employer to pay overtime when the vessel was on the Illinois side of the channel, and forgo such overtime when on the Missouri side. In effect, not only would this produce several employers with different overtime obligations on the same river, but also different overtime benefits for employees working on the same vessel.

Plaintiffs agree that admiralty jurisdiction over wage claims of seamen are anciently established. *Putnam v. Lower,* 236 F.2d 561 (9th Cir.1956); *Sheppard v. Taylor,* 30 U.S. 675, 5 Pet. 675, 8 L.Ed. 269 (1831). However, they argue that application of State overtime law does not abrogate such jurisdiction. *Pac. Merchant Shipping Ass. v. Aubry,* 918 F.2d 1409 (9th Cir.1990).

Plaintiffs rely primarily on *Aubry* where the Ninth Circuit held that California could apply its state labor law overtime provisions to California residents who are either "seamen" as defined in and exempted from the provisions of the federal FLSA, or "maritime employees" who are seamen in the general maritime sense. *Id.* The Ninth Circuit construed congressional intent in excluding seamen from coverage under the FLSA as:

> Congress' intent to prevent overlapping regulation of wage and hour conditions of seamen by different federal agencies. Further, the extensive legislative history

of the 1961 amendments to the FLSA makes clear Congress determination that federal minimum wage levels for seamen were necessary, but discloses nothing indicating that, by leaving the exemption of seamen from the FLSA's overtime provisions in place, Congress intended to preclude states from applying overtime pay provisions to the FLSA—exempt seamen ... *Id.* at 1418.

Plaintiffs are in effect claiming that there is no comprehensive regulatory scheme available to seamen concerning overtime pay. The Court respectfully disagrees and also finds that *Aubry* is distinguishable.[5]

*Aubry* involves seamen who work on vessels' whose duties involve control and clean up of oil spills and other environmentally hazardous discharges in the Santa Barbara Channel off the California coast and crews that transport passengers, light supplies and mail from piers near Santa Barbara to offshore oil platforms. *Id.* at 1413. Additionally, all of the employees are California residents, who are living in California, all hired in California, receive paychecks at California addresses, and pay California taxes. *Id.* at 1414. Further, the Ninth Circuit, in a later decision, stated that the Court rendered its decision in Aubry

> because plaintiffs were residents of California who did not engage in 'foreign, intercoastal, or coastwise voyages,' application of the California labor statutes would not interfere with uniform application of federal admiralty law. Also key to [its] decision was the fact that the state of California had a 'strong interest in protecting maritime employees that reside in the state and [who] work to protect California's coastal environment' through oil spill clean-up operations. (citations omitted).

*Fuller v. Golden Age Fisheries,* 14 F.3d 1405, 1409 (9th Cir.1994).

---

5. The Court notes that it is not bound by the Ninth Circuit's decision.

In the case at bar, the Plaintiffs are seamen employed by the Defendants to operate tugboats on federal navigable waterways, including Illinois waterways and the Mississippi River. The goods transported by Defendants' vessels are occasionally delivered to St. Louis, Missouri. The distinguishing factors here are the involvement of interstate commerce, the selling and delivery of goods between states, and the varying state presence, Illinois and Missouri, of the Mississippi River channel. *Aubry* deals with employees who protect and keep the environment clean. There is no transportation of goods to transport/sell as there is in this case and there is only one state involved in *Aubry* as there are two states here. Further, the Court finds that in 1961, Congress amended the FLSA to guarantee seamen a minimum wage. Just because there was no modification regarding the prohibition of seamen receiving overtime, does not mean that Congress was silent on the issue, but rather it means that they had already expressly exempted the seamen from overtime.

■ Finally, the Supreme Court decision in *United States v. Locke*, 529 U.S. 89, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000) demonstrates that the savings clause in the FLSA does not permit states to eliminate the seamen exception and that any holding to the contrary is inapplicable. In *Locke*, the Supreme Court was faced with a similar savings clause when it preempted the State of Washington's regulation of tanker vessels. *Id.* at 106, 120 S.Ct. 1135. "Limiting the saving clause as we have determined respects the established federal-state balance in matters of maritime commerce between the subjects as to which the states retain concurrent powers and those over which the federal authority displaces state control." *Id.* The Court found it "quite unlikely that Congress would use a means so indirect as the savings clause

... to upset the settled division of authority by allowing states to impose additional unique substantive regulation on the ... conduct of vessels." *Id. Locke* held that a savings clause should not be read more broadly than is indicated by its placement and text, and expansive reading of preemption savings clauses is particularly inappropriate in maritime matters, "where doing so would upset the careful regulatory scheme established by federal law." *Id.*

Here, Defendants and Plaintiffs agree that the savings clause permits the states to be more generous in two specific ways—states can create a higher minimum wage or shorter maximum workweek. 29 U.S.C.A. § 218. However, nothing in the savings clause of the FLSA authorizes the states to eliminate the seamen exemption. The Court finds that the FLSA preempts the Illinois Minimum Wage Law, 820 ILCS 105/3. Therefore, Plaintiffs are not entitled to overtime pay.

### V. *Conclusion*

Accordingly, the Court **GRANTS** Lewis & Clark Marine, Inc.'s motion to dismiss Second Amended Class Action Complaint (Doc. 101); Tabor Marine Services, Inc.'s motion to dismiss, or in the alternative for summary judgment (Doc. 105); Osage Marine Service, Inc.'s motion to dismiss (Doc. 114); Jack Tanner Towing Co., Inc.'s motion to dismiss Plaintiff's Second Amended Complaint or alternatively to enter summary judgment (Doc.119); and Illinois Marine Towing, Inc.'s motion for summary judgment (Doc. 163). The Court **DISMISSES** *with prejudice* Plaintiff's Second Amended Complaint (Doc. 90). Further, the Court **DENIES AS MOOT** Tabor Marine Services, Inc.'s motion for oral argument (Doc. 179).

**IT IS SO ORDERED.**