[No. 50642-1-I.   Division One.   June 9, 2003.]

ROBERT J. STRAIN, *Individually and on Behalf of Others Similarly Situated, Appellant*, v. WEST TRAVEL, INC., *Respondent.*

*Richard J. Davies* (of *Levinson Friedman, P.S.*), for appellant.

*M.A. Michelle Buhler* and *Randall Thomsen* (of *Danielson Harrigan & Tollefson*), for respondent.

ELLINGTON, J. — Robert Strain worked for Cruise West on a ship sailing the Columbia River. He filed a proposed class action suit alleging Cruise West violated the wage and overtime provisions of the Washington Minimum Wage Act, chapter 49.46 RCW (MWA or Act). But Strain was not covered by the Act because he was required to sleep at his place of employment, and in any event, maritime law preempts his claims. The trial court so ruled, and we affirm in all respects.

## FACTS

Cruise West operates cruise ships on itineraries throughout the Northwest, California, Mexico, Canada and to other international destinations. It is incorporated in Washington, and has its headquarters here. The company employs customer service representatives to attend to passenger needs, assist with meal service, and ensure vessel preparation, and requires them to sleep on board during cruises. Cruise West recruits these employees nationwide, trains them in Seattle, and then assigns them to varying cruise itineraries. At the time of Strain's suit, customer service representatives were paid $50 a day plus a guaranteed minimum tip of $35 a day, with no overtime.

Strain was a Washington resident when Cruise West hired him as a customer service representative in September 2001. He was assigned to the *Spirit of Alaska* on Cruise West's Columbia-Snake River tour, which began and ended in Portland and included stops in Washington and Oregon. Two weeks into his employment, Strain refused to clean his assigned staterooms, and was fired. Shortly thereafter, he filed this class action seeking wages and overtime under the MWA.

The trial court granted summary judgment for Cruise West and dismissed Strain's complaint, ruling that employees who are required to sleep at their places of employment are not covered by the MWA and that, in any case, federal maritime law preempts application of the Washington MWA wage and overtime provisions under these circumstances.

## DISCUSSION

Minimum Wage Act Exemption

The MWA establishes minimum hourly wages for all employees.[1] The Act provides, however, that certain workers are not "employees" covered by the Act:

---

[1] RCW 49.46.020.

(5) "Employee" includes any individual employed by an employer but shall not include:

. . . .

(j) Any individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties.[2]

■ The question here is whether this provision exempts Strain from the protections of the Act. Exemptions from remedial legislation such as the MWA are narrowly construed, and are applied only to situations that are plainly and unmistakably consistent with the terms and spirit of the legislation.[3] Under the plain meaning rule, courts derive the meaning of a statute from the "wording of the statute itself."[4] A statute is ambiguous when, either on its face or as applied to particular facts, it is fairly susceptible to different, reasonable interpretations.[5] Statutes must be construed to avoid strained or absurd results.[6]

■ Strain contends that the "sleeping exemption" is ambiguous because the antecedent of the "not engaged in the performance of active duties" clause is unclear. Under the last antecedent rule, "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one."[7] Under this rule, the qualifying phrase "not engaged in the performance of active duties" should apply to both the "reside or sleep" and the "otherwise subject to call" antecedents. Strain thus argues the sleeping exemption applies only where an employee is both (1) sleeping at

[2] RCW 49.46.010. RCW 49.46.130 sets out the minimum rate of compensation for employment in excess of a 40-hour workweek. The provision does not apply to any person exempted under RCW 49.46.010(5).

[3] *Drinkwitz v. Alliant Techsys.*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000).

[4] *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991).

[5] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

[6] *Herrington v. David D. Hawthorne, CPA, P.S.*, 111 Wn. App. 824, 837, 47 P.3d 567 (2002), *review denied*, 148 Wn.2d 1025 (2003).

[7] *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781-82, 903 P.2d 443 (1995).

his/her place of employment and spending a substantial portion of time subject to call, and (2) not engaged in the performance of active duties. Strain contends that employees required to sleep at their places of employment are covered by the Act except when sleeping or "otherwise engaged in personal matters outside the scope of . . . employment."[8] Strain contends that his interpretation is at the very least a reasonable reading of the statute, and that the sleeping exemption therefore cannot be said plainly and unmistakably to apply to him.

We disagree, for several reasons. First, Strain's reading of the statute produces a category of excluded employees who are required to sleep at the workplace, and are not engaged in the performance of active duties. Such a category of workers could be sensibly identified only if the contrary were possible—that is, if a worker could be sleeping at the workplace while performing active duties. This is not a reasonable interpretation, and leads to absurd results.

Second, Strain's interpretation results in a category of workers who are sometimes covered and sometimes exempt. But MWA exclusions serve to identify broad categories of excluded workers based on the type of employment. In none of these categories does coverage vary from hour to hour depending upon the type of activity in which an employee is momentarily engaged.[9] This is sensible, given the structure of the statute, and is probably unavoidable, given the accounting and other potential problems that would attend a variable status.

Strain contends, however, that the sleeping exemption is different from the other exclusions and does result in a category of employees who are sometimes covered and sometimes exempt. For this premise Strain relies entirely upon *Chelan County Deputy Sheriffs' Ass'n v. County of*

---

[8] Appellant's Opening Br. at 8.

[9] *See* RCW 49.46.010(5) (stating various exempt categories).

*Chelan.*[10] But the *Chelan* decision does not support Strain's argument. The court did not address the sleeping exemption, and certainly did not recognize a category of workers who were covered by the Act one hour and not the next. The issue in *Chelan* was whether a group of deputy sheriffs should have been granted summary judgment on the question of their entitlement to compensation under the MWA for time spent on call. The county argued the deputies were exempt under RCW 49.46.010(5)(j) because they spent a substantial portion of work time subject to call, but not engaged in the performance of active duties. The court held that whether on-call time is spent in the performance of active duties, and therefore covered, is to be determined by examining multiple factors, which in that case involved questions of fact for the jury.[11] Nothing in the opinion suggests that coverage for an individual employee would turn out to be a sometime thing.

Strain particularly relies upon the *Chelan* court's discussion of sleeping time. But this discussion arose because the deputies were on call for periods longer than 24 hours, and the county argued that on-call time spent sleeping and eating is not active duty. The court considered and rejected, as an inaccurate reflection of Washington law, a federal regulation providing that where parties have no agreement to the contrary, sleeping time constitutes hours worked.[12] Ultimately the court concluded that "compensability of sleep time of individuals who are on call for periods longer than 24 hours is a question of fact, which must be resolved by applying the same multifactor approach which we have

---

[10] 109 Wn.2d 282, 745 P.2d 1 (1987).

[11] *Id.* at 293-96.

[12] *Chelan*, 109 Wn.2d at 296-97 (quoting 29 C.F.R. § 785.22). Strain points to this and one other federal regulation under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, providing that work done while traveling must be compensated, and argues these regulations militate against a finding that all employees required to sleep at their place of employment are exempt from the Washington MWA. *See* 29 C.F.R. §§ 785.22(a), 785.41. The Fair Labor Standards Act does not contain a sleeping exemption; the regulations are of no help here.

adopted with respect to on-call time in general."[13] The court never considered, or discussed, the sleeping exemption, and its reference to "compensability of sleep time" occurred only in the context of the multifactor test for on-call time. This discussion offers no support to Strain's reading of the sleeping exemption.

■ We find no ambiguity in the statute, despite its errant comma, and hold the exemption plainly and unmistakably applies to Strain. We note that our reading is supported by the legislative history. In answer to a query about a provision that would have paid vessels' crew members the minimum wage "for all hours during such period when he was actually on duty," Representative Brink explained the omission of such a provision as deliberate:

> I believe that provision you read is the same or similar to one in the original bill during the regular session, and it is not in this particular bill for two reasons. The first one is that this is a wage bill and not an hour bill, and the second is that a person is exempted whose duties require him to sleep at his place of employment or otherwise spends a substantial time subject to call.[14]

Strain responds to this by pointing to subsequent amendments to the MWA excluding seamen on foreign vessels and prison inmates from coverage. He contends these provisions are merely redundant unless we adopt his reading of the Act. But the amendments are not redundant. They address previously unclear questions. The foreign vessel exemption applies to crew members who sleep ashore, while the inmate exemption applies to residents of correctional, detention, treatment or rehabilitative institutions, even if they are employed off-site.

The statute is plain: employees required to sleep at their places of employment are exempt from coverage under the MWA.

---

[13] *Chelan*, 109 Wn.2d at 297.

[14] HOUSE JOURNAL, 37th Leg., Ex. Sess., at 147 (Wash. 1961); *see also* 1976 Op. Att'y Gen. No. 21 (citing clear legislative history creating a categorical exemption that would include on-call fireman required to sleep at the station).

## Preemption of the Washington MWA

Even were Strain covered by the Act, its enforcement here is preempted by federal maritime law. State laws apply to maritime commerce unless they contravene the essential purpose of an act of Congress, work material prejudice to the characteristic features of the general maritime law, or interfere with the proper harmony and uniformity of that law.[15] The dispute here centers upon the latter issue: whether applying the Washington MWA to employees on cruise ships making interstate voyages would unduly disrupt harmony and uniformity in the federal admiralty system.[16] The inquiry turns on a balancing of the federal interest in uniformity and the state's interest in enforcing its legislation.[17]

Strain contends that application of the Washington MWA would not disrupt the federal interest in uniformity. He points to three cases in which certain provisions of state wage laws were held not preempted. In *Pacific Merchant Shipping Ass'n v. Aubry*,[18] maritime law did not preempt application of California laws regarding overtime pay where the workers were California residents engaged in oil spill clean-up work off the California coast. In *Greene v. Pacific King Fisheries, Inc.*[19] and *Paul v. All Alaskan Seafoods, Inc.*,[20] claims were made under the Washington MWA for double damages and attorney fees after the defendants violated employment contracts and willfully withheld wages, and the courts held those penalty provisions not preempted.

---

[15] *Paul v. All Alaskan Seafoods, Inc.*, 106 Wn. App. 406, 411, 24 P.3d 447 (2001) (quoting *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S. Ct. 524, 61 L. Ed. 1086 (1917)).

[16] *See Pac. Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1424 (9th Cir. 1990).

[17] *Paul*, 106 Wn. App. at 418.

[18] 918 F.2d 1409, 1424 (9th Cir. 1990).

[19] 1993 WL 565333, 1993 U.S. Dist. LEXIS 21393 (W.D. Wash.).

[20] 106 Wn. App. 406, 24 P.3d 447 (2001).

None of these cases is similar to this one. *Aubry* involved only California residents employed on ships working exclusively off California.[21] Neither *Paul* nor *Greene* involved application of state wage rates, and in *Greene*, the court drew a clear distinction between penalty statutes and wage rate statutes for preemption purposes:

> *Where the rate of wages is at issue*, and where state and federal provisions regarding wages conflict, *vessel owners have legitimate concerns regarding uncertainty, such as whether the wage rate must change as the vessel moves from jurisdiction to jurisdiction. Federal uniformity of maritime law might be materially disrupted in such cases.* Where nonpayment of wages is at issue, there is no such uncertainty. Vessel owners face a uniform state and federal requirement: to pay their maritime employees the wages they are due.[22]

Strain seeks to apply Washington's wage rates. This squarely implicates the uncertainties identified in *Greene*. The itinerary Strain worked, for example, began in Oregon, included stops in Washington and Oregon, and ended in Portland. Oregon and Washington have differing minimum wage rates.[23] Further, the potential class members are residents of many different states. Under Strain's analysis, Cruise West would presumably pay each worker according to the laws of the worker's home state—a nightmarish accounting prospect.[24]

---

[21] *Aubry*, 918 F.2d at 1425.

[22] *Greene*, 1993 WL 565333 at *4 (emphasis added).

[23] The Fair Labor Standards Act wage rate is $5.15 per hour. 29 U.S.C. § 206(a)(1). Washington currently has a minimum wage of $7.01 per hour. *See* RCW 49.46.020. Oregon has a minimum wage of $6.50 per hour. Or. Rev. St. § 653.025(3). California, Alaska and British Columbia, destinations on various other Cruise West itineraries, also all have differing minimum wage rates. Cal. Lab. Code § 1182.11 (West) ($5.75 per hour); Alaska Stat. § 23.10.065(a) (Michie) ($7.15 per hour); B.C. Reg. 396/95 § 15 ($8 per hour Canadian).

[24] *See Paul*, 106 Wn. App. at 419; *Coil v. Jack Tanner Towing Co.*, 242 F. Supp. 2d 555, 560 (S.D. Ill. 2002) (applying Illinois wage law "would force . . . carriers to track, hour by hour when their vessels are in Illinois waters, and in some cases, when their vessels are on the Illinois side of a river and when the vessels are on another state's side of the river, to determine which wage law applies").

The potential disruption of the uniformity and harmony of the maritime law is clear. Further, while Washington undoubtedly has a strong interest in ensuring its residents are paid a fair wage, that interest is protected by the federal minimum wage law.[25] Application of the Washington MWA's wage rate provisions to Cruise West's customer service representatives would unduly disrupt the uniformity and harmony of federal maritime law. The balancing of state and federal interests thus requires preemption of Strain's MWA claims.

The trial court did not err. We affirm.

BECKER, C.J., and APPELWICK, J., concur.

Review denied at 150 Wn.2d 1029 (2004).