129 A.3d 1147

HOWARD E. FLECKER, III, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED PERSONS, PLAINTIFF, v. STATUE CRUISES, LLC, AND TERRY MACRAE, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided July 26, 2013.

32

34

*Ravi Sattiraju* for plaintiffs (*The Sattiraju Law Firm, P.C.,* attorneys).

*Raymond G. McGuire* (*Kauff, McGuire & Margolis*) of the New York bar, admitted pro hac vice, for defendants (*Genova, Burns & Giantomasi*), and *Mr. McGuire,* attorneys; *Patrick W. McGovern* and *Mr. McGuire,* of counsel; *Aislinn S. McGuire* (*Kauff, McGuire & Margolis*) of the New York bar, admitted pro hac vice.

LAWRENCE MARON, J.S.C.

*Issue/Motion*

Before the court are two motions for reconsideration pursuant to *Rule* 4:49–2, one filed by plaintiff and one filed by defendants, of this court's decision and Order entered on June 3, 2013.

*Applicable Law*

 *Rule* 4:49–2 governs motions for reconsideration. "Reconsideration is a matter to be exercised in the trial court's sound discretion." *See Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi,* 398 *N.J.Super.* 299, 310, 942 *A.*2d 21 (App.Div.2008) (citations omitted). Further, "[a] litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." *Ibid.* "Reconsideration should be utilized only for those cases . . . that fall within that narrow corridor in which either: 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt did not consider, or failed to appreciate the significance of probative, competent evidence." *Ibid.*

*Analysis*

The court will address the arguments presented by the respective parties and augment its previous decision as follows:

I. *Wage and Hour Law Preemption Analysis*

 a. *Court Misstated the Concepts of Intercoastal/Coastwise Voyages*

 Plaintiff claims that the court mistakenly stated and implied on repeated occasions that the federal Shipping Act covered the voyages at issue in this case, which led this court to mistakenly conclude that federal maritime law applied in this case. The court disagrees.

In conducting a detailed review of this court's previous opinion, there is nothing within that opinion which concluded the Shipping Act covered the voyages at issue. Indeed, nowhere within the opinion do the words "Shipping Act" even appear.

In fact, as the court will highlight, the Shipping Act does not apply to the employees involved in the instant matter because it only covers vessels engaged in foreign, intercoastal, or coastwise

voyages. *Pac. Merch. Shipping Ass'n v. Aubry,* 918 *F.*2d 1409, 1412 (9th Cir.1990). For the purposes of the record:

> The Shipping Act, 46 *U.S.C.* §§ 2101–14701, divides "voyages" into three types. "Foreign voyages" are voyages between ports in the United States and ports in foreign countries (except Canada, Mexico, and the West Indies). *See* 46 *U.S.C.* § 10301(a)(1). "Intercoastal voyages" are voyages between ports on the Atlantic and Pacific coasts. See 46 *U.S.C.* § 10301(a)(2). "Coastwise voyages" are voyages "between a port in one State and a port in another State (except an adjoining State)." *See* 46 *U.S.C.* § 10501(a).
>
> [*Id.* at 1414.]

Although the court did use the term "intercostal" [sic] on page 12 of its opinion, the term was only used once and was a typographical error. The defendants are correct, however, that the "analysis preceding the word 'intercostal' [sic] makes it clear that the court is using the term in a descriptive, not a technical sense, simply to mean ... voyages [on federal waters] between two states." The court's analysis clearly set forth its position on this issue, finding the "matter involves an operation entailing interstate commerce, on federal waters, with employees who reside and work in two different states."

Therefore, this Court finds that it did not express a decision based upon a palpably incorrect or irrational basis. *See Asterbadi, supra,* 398 *N.J.Super.* at 311, 942 *A.*2d 21.

### b. *The Court Conducted No Analysis Whatsoever Into Determining the Clear and Manifest Intent of Congress*

Plaintiff further contends that the court erred because it did not engage in an analysis of the intent of Congress, a central and guiding principle underscoring all preemption analysis. More specifically, plaintiff asserts that "[a] cursory review of this matter reveals that there is absolutely no evidence that it was the clear and manifest intent of Congress to preempt the New Jersey Wage and Hour Law for seaman that do not engage in 'foreign, intercoastal and coastwise voyages.'" Again, the court disagrees.

First, as noted previously, this court did not rely on the Shipping Act in reaching its conclusion. Rather, this court's

decision that the New Jersey Wage and Hour Law ("NJWHL") was preempted was based on an application of general federal admiralty law.

The court, in its opinion, set forth Congress's intent that federal law is to control all maritime law. *Coil v. Jack Tanner Co., Inc.,* 242 *F.Supp.*2d 555, 558 (S.D.Ill.2002) (citing *Knickerbocker Ice Co. v. Stewart,* 253 *U.S.* 149, 160–161, 40 *S.Ct.* 438, 440, 64 *L.Ed.* 834, 839 (1920)); *S. Pac. Co. v. Jensen,* 244 *U.S.* 205, 215, 37 *S.Ct.* 524, 528–529, 61 *L.Ed.* 1086, 1098 (1917) (superseded by statute). Furthermore, and to re-enforce this court's position, the United States Supreme Court in *Jensen* restricted states' authority in maritime matters based on this constitutional grant of authority to the federal government.

■ Under the so-called *Jensen* doctrine, no state legislation concerning navigation is valid:

[i]f it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and *interstate* relations.

This limitation, at the least, is essential to the effective operation of the fundamental purposes for which [the maritime] law was incorporated into our national laws by the Constitution itself.

[*Aubry, supra,* 918 *F.*2d at 1421 (citing *Jensen,* 244 *U.S.* at 216, 37 *S.Ct.* at 529, 61 *L.Ed.* at 1098 (1917)).]

Lastly, the Fair Labor Standards Act ("FLSA") explicitly exempts seamen from its overtime requirements. 29 *U.S.C.* § 213(b)(6). Here, there is no dispute that the plaintiff and members of the class, are, in fact, seamen under the FLSA. *See also Flecker v. Statue Cruises, LLC,* No. A–4390–10 (App.Div. Nov. 14, 2012) (slip op. at 27), 2012 *WL* 5499894.

Therefore, to remain consistent with the intent of Congress in maintaining uniformity and harmony in maritime matters, this court finds that it did not express a decision based upon a palpably incorrect or irrational basis. *See Asterbadi, supra,* 398 *N.J.Super.* at 311, 942 *A.*2d 21.

c. *Balancing of Federal and State Interests*

Plaintiff argues that the court did not perform a balancing test of state and federal interests. Plaintiff again urges this court to follow the analysis set forth in *Aubry* and find that the "enforcement of the NJWHL in this situation is 'fully compatible with federal maritime law' and no 'feature of federal maritime law ... would be impaired or frustrated by application of [the statute].'" Again, the court disagrees.

First, as this court acknowledged in its original opinion, the Appellate Division did not advise this court to follow and decide consistently with the Ninth Circuit's opinion in *Aubry*. Instead, the Appellate Division instructed this court to use the Ninth Circuit's analysis as an instructive tool and engage in a similar fact-sensitive analysis. The Appellate Division specifically stated that *Aubry* is not controlling. *Flecker, supra,* No. A–4390–10 (App.Div. Nov. 14, 2012) (slip op. at 30). Thus, in performing this analysis, this court distinguished *Aubry* on several grounds. Unlike the maritime employees in *Aubry,* who all resided in California and worked on vessels that operated exclusively off the California coast, the employees in the instant matter, reside in two different states, work in two different states at any given time during their shifts, are employed by a company that maintains offices in two different states, and uses vessels registered in New York, to engage in interstate commerce, on federal waters, between two states.

Moreover, the court did perform a balancing test by identifying the operation of defendants, including the routes traveled, location of the offices, and the amount of time each employee spent working in either state. After examining this information, the court concluded that the state's interests were outweighed by the federal interest and applying the NJWHL "would destroy the uniformity of rules applicable to commerce on the inland waterways." *Coil, supra,* 242 *F.Supp.*2d at 559. Here, New York law, similar to federal law, specifically exempts seamen from its overtime provisions. However, there is no such exemption under New

Jersey law. Thus, the application of the NJWHL "conflicts with the federal maritime scheme of uniformity and avoidance of disruption." *Id.* at 560.

■ Lastly, plaintiff asserts that the court, without being presented with any competent evidence or expert testimony, incorrectly arrived at the conclusion that an "accounting chaos" would ensue in this matter. However, as pointed out by defendants, this court was well within its discretion to make that determination based on the arguments and case law presented. Specifically, defendants' argument notes that in any one typical work day, a Statue employee is working in both New York and New Jersey, thereby clearly establishing the potential for a "nightmarish accounting prospect," similar to the one addressed in *Strain v. West Travel, Inc.,* 117 *Wash.App.* 251, 259, 70 *P.*3d 158, 159 (2003), which involved facts similar to this case.

Therefore, in light of the foregoing, the Court finds that it did not express a decision based upon a palpably incorrect or irrational basis. *See Asterbadi, supra,* 398 *N.J.Super.* at 311, 942 *A.*2d 21.

II. *CEPA Preemption*

■ Defendants contend that this court erroneously applied a narrow exception to the *Garmon* doctrine by concluding that the New Jersey Conscientious Employee Protection Act ("CEPA") "touches interests so deeply rooted in local feeling and responsibility" that preemption is warranted. *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 *U.S.* 236, 79 *S.Ct.* 773, 3 *L.Ed.*2d 775 (1959). Specifically, defendants assert that the discrimination cases relied upon by this court are inapposite and irrelevant, and that the court failed to establish how CEPA is so deeply rooted in local feeling and responsibility within New Jersey. The court disagrees.

The overriding policy of the New Jersey Law Against Discrimination ("LAD") and CEPA is to protect society at large. *See Cedeno v. Montclair State Univ.,* 163 *N.J.* 473, 478, 750 *A.*2d 73 (2000). Further, the New Jersey Supreme Court in *Abbamont v.*

*Piscataway Township Board of Education*, 138 *N.J.* 405, 417–418, 650 *A.*2d 958 (1994), highlighted the essential purpose and goal of CEPA's enactment. As the bill's sponsor stated, CEPA's enactment is "important to all New Jersey workers who are concerned about working in a safe environment with honest employers." Linda Lamendola, Safeguards Enacted for "Whistleblowers," The Star Ledger, Sept. 8, 1986, at 1. When signing the whistleblower law, former New Jersey Governor Thomas Kean explained CEPA's purpose:

> It is most unfortunate—but, nonetheless, true—that conscientious employees have been subjected to firing, demotion or suspension for calling attention to illegal activity on the part of his or her employer.

> It is just as unfortunate that illegal activities have not been brought to light because of the deep-seated fear on the part of an employee that his or her livelihood will be taken away without recourse.

> . . . .

> Both CEPA and LAD effectuate important policies. Each seeks to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority by employers.

> [Office of the Governor, News Release at 1 (Sept. 8, 1986).]

Moreover, "[n]ot every dispute concerning employment . . . is pre-empted by . . . provisions of the federal labor law." *Paige v. Henry J. Kaiser Co.*, 826 *F.*2d 857, 863 (9th Cir.1987) (citing *Allis–Chalmers Corp. v. Lueck*, 471 *U.S.* 202, 211, 105 *S.Ct.* 1904, 1911, 85 *L.Ed.*2d 206, 215 (1985)). "States possess broad authority under their police powers to regulate the employment relationship to protect workers[.]" *De Canas v. Bica*, 424 *U.S.* 351, 357, 96 *S.Ct.* 933, 937, 47 *L.Ed.*2d 43, 49 (1976). Here, New Jersey's CEPA law is for the benefit and protection of its workers and its "interest in providing this private cause of action is the enforcement of the underlying statute or policy, not to regulate the employment relationship." *Paige, supra*, 826 *F.*2d at 863 (citation omitted). "[A]llowing an employer to avoid the effects of state laws by this type of incorporation would subvert congressional intent for the NLRA to coexist with state laws which set labor standards." *Ibid.*

Thus, in light of this State's overarching purpose and goal in enacting CEPA, and the fact that CEPA in no way interferes with the legislative goals of the NLRA, this Court was correct in concluding that CEPA "touches interests so deeply rooted in local feeling and responsibility" and therefore, is not preempted by the NLRA.

Furthermore, defendants contend that the exception only applies where the state has a significant interest in adjudicating the dispute *and* the adjudication poses little threat to the regulatory jurisdiction of the NLRB. Specifically, defendants assert that if this case proceeds to trial, a jury may well render a verdict contrary to NLRB rulings in similar cases and therefore New Jersey would have conflicting laws governing these kinds of retaliation cases. Again, the court disagrees.

Defendants provide no authority to support their position that having this claim proceed to trial would pose a threat to the NLRB's regulatory jurisdiction. Instead, this court found that preempting plaintiff's CEPA claim with the NLRA would directly contravene this State's goal of prohibiting and deterring employers from retaliatory conduct against their employees. Specifically, when enacting CEPA, the New Jersey Legislature made available to prevailing parties all remedies under common law tort actions. Most notably, unlike most tort violations, with CEPA cases there is no cap or limit on the amount of an award for punitive damages. *See N.J.S.A.* 34:19–5. However, under the NLRA, the available remedies are limited. The NLRA provides that the Board, upon a finding that an unfair labor practice has been committed, "shall issue ... an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay[.]" 29 *U.S.C.* § 160(c). Thus, allowing this matter to proceed to the NLRB would thwart this State's intended purpose in enacting its CEPA statute.

Furthermore, although the court is not aware of the specific reasons plaintiff did not file a claim directly with the NLRA, it is

undisputed that no such claim was filed. Under these circumstances, the court agrees with plaintiff's position and reliance upon *Paige, supra,* 826 *F.*2d at 862, in which the Ninth Circuit held that as master of his or her complaint, a plaintiff who does not allege a violation of his or her rights under the NLRA, but only violations of state statutes and policy, may choose to plead his or her action as a state claim. *Ibid. See also Caterpillar, Inc. v. Williams,* 482 *U.S.* 386, 107 *S.Ct.* 2425, 96 *L.Ed.*2d 318 (1987).

In their initial briefs, defendants contended that the Ninth Circuit in *Paige* addressed the preemption issue under § 301 of the Labor Management Relations Act, which requires an interpretation of a collective bargaining agreement. Here, defendants argue there is no such requirement. While the court acknowledges that the issue in *Paige* was analyzed under § 301, the Ninth Circuit did recognize that there was no need to conduct a *Garmon* analysis because the appellants chose instead to file a state cause of action. Similarly, the plaintiff in the instant matter has set forth a state cause of action under CEPA and has not alleged that any of his rights were violated under the NLRA. Therefore, plaintiff's CEPA claim may proceed under that theory.

■ Lastly, defendants contend that the court determined that defendants' October 1, 2009, memorandum was a "threat" without properly considering the record evidence. This court made that finding based upon the explicit statements contained in the memo. Based on the language in the memo, a jury could reasonably conclude that defendants attempted to use the threat of reducing union employees' work hours in order to limit the number of supporters and ultimately place the plaintiff in a position to withdraw his complaint in its entirety. The general definition of a threat is an expression of intention to inflict possible menace or damage. The memo in question stated, in relevant part:

> We are puzzled and disappointed that the Union apparently did not consider the impact the lawsuit would likely have on you and our Company. For those of you who will lose a day's pay (or more) every week, I leave it to your good judgment whether Local 333's possible involvement in this lawsuit was in your best interests.

[*Flecker v. Statue Cruises, LLC,* No. A–4390–10 (App.Div. Nov. 14, 2012) (slip op. at 4).]

Thus, in light of the explicit comments in the memo, the court finds that it was correct in concluding the memo could reasonably be deemed a threat. However, this court emphasizes that it is not making any specific findings of fact or conclusions of law that the memo or the actions taken by defendants are indeed a retaliatory action under CEPA. Rather, this court finds, as did the Appellate Division, that "questions of fact remain that should be left to a jury." *Id.* at 20. Under the standard set forth in *Brill v. Guardian Life Insurance Company of America,* 142 *N.J.* 520, 545, 666 *A.*2d 146 (1995), summary judgment is not to be granted when genuine issues of material fact remain.

Therefore, based on the foregoing, the court finds that it did not express a decision based upon a palpably incorrect or irrational basis. *See Asterbadi, supra,* 398 *N.J.Super.* at 311, 942 *A.*2d 21.

*Conclusion*

Plaintiff's motion for reconsideration, pursuant to *Rule* 4:49–2, is denied.

Defendants' motion for reconsideration, pursuant to *Rule* 4:49–2, is denied.